PIEDMONT OIL COMPANY, INC., COMPLAINANT, APPELLEE, *v.*
L. M. KENNEDY, COUNTY COURT CLERK, DEFENDANT,
APPELLANT.*

(*Knoxville*, September Term, 1932.)

Opinion filed November 26, 1932.

*On construction of tax laws in favor of taxpayer, see 25 R. C. L.,
1092; R. C. L. Perm. Supp., p. 5652; R. C. L. Pocket Part, title
"Statutes," section 307.

FOWLER & FOWLER, for complainant, appellee.

JAS. G. JOHNSON, for defendant, appellant.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainant Piedmont Oil Company paid the privilege tax imposed by chapter 89, Acts of 1927, upon oil and filling stations, which are defined as follows: "An oil or gas filling station shall each be understood to mean and include any place within this State where petroleum products, benzol or other substitutes for petroleum products are sold or offered for sale and delivered direct to motor driven vehicles as a fuel for the same."

The defendant, the county court clerk, demanded in addition the tax imposed by the Revenue Act of 1927 upon oil depots. The complainant paid the additional tax under protest and coercion and this action was brought to recover it.

Under the heading "Oil Depot" the Revenue Act provides: "Each and every person . . . having or maintaining an oil depot . . . shall pay a privilege tax for such place or depot."

The amount of the tax being made dependent upon locality, this section of the Act further provided that—

"The term 'Oil Depot' shall be understood to mean and include any place within this State where petroleum

products or substitutes therefor are received in quantities equal to or greater than a railroad carload, and at or from which place said products are delivered, sold or offered for sale, to dealers therein or consumers thereof, in railroad carload quantities or less, including any railroad car, railroad depot, boat, barge, public or private storage warehouse, used for such purposes. Provided, this section shall not apply to automobile service stations or oil and gas filling stations selling solely at retail.

"The term 'railroad carload' shall be construed to mean a quantity of petroleum products or substitutes therefor equivalent to three thousand (3,000) gallons liquid measure, or twenty thousand (20,000) pounds avoirdupois weight.''

The chancellor found that complainant was operating two filling stations upon which it paid the tax and was not engaged in selling at wholesale or maintaining an oil depot and therefore not subject to the tax. He decreed a recovery. The defendant appealed and insists that the chancellor erroneously construed and applied the statute. It is said on behalf of defendant that since complainant received petroleum products in quantities equal to or greater than a railroad carload at a place from which it sold to consumers in quantities greater than required to fill an automobile tank, although less than a carload, it is liable for the tax.

The facts are presented by the testimony of Frank Preston, manager of the complainant company. No other evidence was offered. It appears that the company maintained two gas and oil filling stations in Knoxville—one at Main Street and Cumberland Avenue and another at Depot and Randolph Streets. Both stations were equipped with gasoline storage tanks and pumps such as

are in common use at filling stations and from which gasoline and oil are sold and delivered directly to customers. At both stations gasoline was distributed to persons using automobiles and trucks, including delivery of gasoline to two customers who operated automobiles for hire.

Preston testified that his company sold and delivered to one of these customers, the Dixie Drive-Yourself Company, 300 gallons of gasoline a week and to the other customer, the Yellow Drive-Yourself Company, 1000 gallons a week, and that the sales to these two customers were made as they used the gasoline, but it was drawn from the pumps at the Main Street station into a truck from which it was delivered to the companies at their place of business in a quantity sufficient for their daily business. Before its use by these companies it was first turned into a storage tank kept for convenience in their place of business and distributed by them to their several automobiles.

As stated, the evidence showed that the complainant paid the tax imposed for the privilege of operating its two filling stations, from which it sold gasoline direct to customers, including the two automobile operating companies which consumed large quantities of gasoline, which, for convenience, was drawn from the Main Street filling station and delivered to them in the amounts and in the manner stated.

The fact that deliveries were made to these two consuming customers by drawing the gasoline at the filling station into a tank wagon and transporting it to the customers would not bring complainant within the classification of one operating an oil depot and thus burden it with the additional tax. It can not be said that a sale

and delivery to its consumers, 300 gallons a week to the Dixie Company and 1,000 gallons a week to the Yellow Car Company for use in operating their automobiles, constituted wholesale. Nor that the fact that they delivered larger quantities than would be required to fill a single automobile tank bring them within the definition of an oil depot because of the delivery of some indefinite quantity of gasoline less than a railroad car lot. Less than a railroad carload might mean ten, fifty or a hundred gallons. With that as the test, every filling station that transports and delivers to an automobile ten gallons would be taxable as an oil depot.

The confusion that resulted in the controversy no doubt arose from the ambiguity in the body of the section defining oil depots and the conflicting proviso excluding filling stations. This section declares an oil depot to be a place where gasoline is received in railroad carload lots, and delivered to dealers or customers in car lots or less, followed by the proviso excluding filling stations that sell solely at retail. The statute must be considered altogether in any attempt to ascertain the intention of the legislature. An ambiguity creating doubt must be resolved in favor of the taxpayer. *Britt* v. *Cook,* 157 Tenn., 54. The proviso evinces the legislative intention and purpose to avoid double taxation upon the privilege of conducting a gasoline filling station where, as a necessary incident to the business, such as complainant was engaged in, it was necessary to purchase and keep on hand a quantity of gasoline sufficient to meet the varying demands of consumers.

We concur with the chancellor in holding that the complainant was not engaged in the business of conducting an oil depot and was not subject to the tax imposed

upon that privilege, but was engaged in the business of conducting an oil and gasoline filling station for the privilege of which it had paid the tax.

Affirmed.