*BERGEDA *v.* STATE.

(*Nashville,* December Term, 1942.)

Opinion filed January 9, 1943.

---

*This case reprinted and annotated in 144 A. L. R. 696.

ELKIN GARFINKLE and DAN GARFINKLE, both of Nashville, for plaintiff in error.

ROY H. BEELER, Attorney-General, WILLIAM F. BARRY, Solicitor General, and HARRY PHILLIPS, Assistant Attorney-General, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error has appealed from the judgment of the Circuit Court of Davidson County sustaining a distress warrant issued by George F. McCanless, State Commissioner of Finance and Taxation, to collect $601.17 inheritance tax, due and unpaid. The warrant was issued pursuant to Chapter 200, Public Acts of 1937, and was levied upon certain real estate of plaintiff in error. The return of the sheriff of Davidson County is as follows:

"Came to hand, etc., executed the within distress warrant by levying on real estate, see description attached, no personal property to be found in my county, as property of Kate Bergeda, to satisfy said warrant, this 24th day of January, 1941.

"(Signed) R. D. Marshall, Sheriff,
"By R. T. Hughes, D. S."

The real estate levied on is described in the warrant and no question made as to the description. The said distress warrant and return thereon was filed by the Clerk of the Circuit Court on the same day it was levied. On February 17, 1941, the plaintiff in error who will hereafter be referred to as the defendant or appellant, moved the trial court to quash the warrant upon the following grounds: (1) The Commissioner of Finance and Taxation is without authority to issue a distress warrant for the collection of inheritance taxes; (2) the Commissioner of Finance and Taxation is without authority to issue a distress warrant for the collection of inheritance taxes against beneficiaries; (3) because no record is filed in this cause showing the basis upon which the distress warrant is issued; (4) there is no record showing that any notice was given to this defendant, nor any opportunity afforded her to be heard prior to the issuance of the distress warrant; (5) the warrant did not authorize a levy on real estate.

The motion was overruled and exception taken. Upon said motion's being overruled, an order was entered upon the minutes of the court directing ''that the lands levied on be sold by the sheriff to satisfy the aforesaid distress warrant and also the cost of this proceeding, to which action of the Court the defendant excepts.''

The defendant, Kate Bergeda, thereupon moved the Court to set aside the judgment of condemnation and grant a new trial, upon the ground that the Court was in error in overruling her motion to quash and for the reasons stated in said motion. Upon the same day the defendant made a motion in arrest of judgment upon the same grounds, that is, that the Commissioner of Finance and Taxation is without authority to issue distress warrants and especially for the collection of inheri-

tance taxes against beneficiaries. This motion being overruled and exception taken, the defendant appealed to this Court and assigned errors. The ground set forth in defendant's motion to quash the distress warrant and the motion in arrest of judgment are made the basis of the several assignments of error.

The legal question presented for our consideration and determination is clearly set forth in the brief of the Attorney-General in the form of three questions: (1) Does the Commissioner of Finance and Taxation have authority to issue a distress warrant for the collection of inheritance taxes? (2) Where the executor or administrator fails to pay inheritance taxes, can the Commissioner enforce the collection of said taxes directly from the beneficiary who has received the property by inheritance? (3) Where distress warrant is issued for the collection of inheritance taxes and levied upon real estate, must the distress warrant affirmatively show that formal notice and a hearing were accorded the taxpayer prior to assessment of the tax, or must the taxpayer pursue the remedy authorized under Code, section 1790 et seq. by paying the tax under protest and suing to recover?

The distress warrant was issued and the levy made under authority of Chapter 200, Public Acts of 1937, and is complete and regular in all respects. It is the contention of the State that, since the right of one to receive property by will or inheritance has been judicially declared to be a privilege, the Commissioner of Finance and Taxation is authorized to collect the tax thus accruing to the State in the same manner as other privilege taxes are collected, i. e., by issuing a distress warrant and levying it upon the property of the delinquent taxpayer. This contention is pointedly questioned by de-

fendant, who insists that the Commissioner has no such authority; that he must look to the executor, administrator, or trustee of an estate for the payment of inheritance taxes.

■ The legal question involved is one of first impression in this State. In construing our inheritance tax statutes it must be kept clearly in mind that the tax imposed is not upon the privilege of transmitting but upon the privilege of receiving property. *Hutchison* v. *Montgomery*, 172 Tenn., 375, 112 S. W. (2d), 827, 830. Mr. Justice CHAMBLISS, speaking for the Court in that case, said:

"In two opinions of this court the Inheritance Tax Law of 1929, which is now embodied in Code, sections 1259-1295, as amended, without substantial change, has been treated as a tax upon the privilege of receiving property."

The same rule was announced in *State ex rel.* v. *Cain*, 162 Tenn., 213, at page 215, 36 S. W. (2d), 82. See also, *English* v. *Crenshaw*, 120 Tenn. (12 Cates), 531, 110 S. W., 210, 17 L. R. A. (N. S.), 753, 127 Am. St. Rep., 1025; *State ex rel.* v. *Clayton*, 162 Tenn., 368, 38 S. W. (2d), 551.

There can be no doubt as to the authority of the Commissioner under the inheritance tax statute of 1929 to proceed against the executor, administrator, or trustee of an estate to collect all taxes that may be due upon property passing to the beneficiaries of such estate. But the question arises and will doubtless arise in future cases, shall we close the door against the State's right to collect from beneficiaries where the property received by them did not at any time pass into the hands of the executor or administrator, or, rather, does the law place this limitation upon such authority?

■ ■ While a taxing statute is construed strictly against the taxing authority and in favor of the taxpayer, we must give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act. *Knox* v. *Emerson,* 123 Tenn., 409, 415, 131 S. W., 972. Now the plain purpose of an inheritance tax statute is to require the payment of a tax by those who enjoy the privilege of receiving property from the estates of decedents, and the courts should so construe it as not to frustrate the power of a state to collect it. Of course the power so exercised, as well as the processes invoked, must not violate any constitutional right of the taxpayer. The first general inheritance tax law in this State is found in the Act of 1919. Prior to that time the only provision for the collection of such taxes was in the general revenue acts. The Act of 1919, c. 46, was repealed by Chapter 29, Extra Session, of the Acts of 1929.

It is earnestly contended by appellant that whereas the taxpayer was personally liable under the 1919 statute (section 7), the repealing statute of 1929 provided that "All taxes due by an estate under the provisions of this Act shall be paid by the executor, administrator, or trustee, out of the funds in his hands for distribution . . . ." Code, section 1291.

Counsel for appellant cites *Hutchison* v. *Montgomery, supra,* as authority for his insistence that the Commissioner of Finance and Taxation has no authority for proceeding against legatees or beneficiaries of an estate. It must be noted that in that case the widow of the deceased and the administrator brought suit against the heirs of the decedent to require them to contribute toward the inheritance tax paid by the administrator out of assets of the estate in his hands. The rights of the State

in the enforcement and collection of the tax due was not involved. The Court said:

"If the tax under consideration is one upon the privilege of receiving property, then it necessarily follows that those taking the property must contribute proportionately to the payment of the tax, because those taking the property are the persons enjoying the privilege. It could not plausibly be insisted that the tax is imposed upon the privilege of receiving property, and yet require such tax to be paid by one not enjoying the privilege, as would be the case if distributees were required to pay the tax for the privilege of heirs who take real property."

■ ■ While it cannot be doubted that Code, section 1291 imposes upon executors, administrators, and trustees the duty to pay all taxes that may be due and payable under the inheritance tax statute, it does not necessarily follow that the State may not, under the general law for the collection of privilege taxes, look to the beneficiary for the payment of the tax. In reaching this conclusion we do not depart from the rule of strict construction against the State. The Legislature in passing the inheritance tax of 1919 and 1929 must have known that the construction given such statutes was that the tax was a privilege upon the right to receive property. Surely the Legislature did not intend that this tax should be paid by one "not enjoying the privilege." The State may proceed against the executor, administrator, or trustee, and also against beneficiaries where the property received by them has not passed into the hands of the personal representative of the decedent.

■ Again we construe the inheritance statute *in pari materia* with the statute for the collection of privilege taxes, i. e., Chapter 200, Public Acts of 1937, and espe-

cially Section 4 of said Act, wherein it is provided that the State is not limited to a particular remedy or procedure in the collection of a particular privilege tax.

Responding to the contention of appellant that the Commissioner of Finance and Taxation must pursue only the remedy provided in the Act of 1929, by suing the administrator or executor and by proper proceedings have a lien declared upon the property received by the beneficiary, we are at the outset confronted with the fact (1) that the property may be so commingled with other property that it cannot possibly be identified, or (2) placed by the beneficiary where it cannot be reached by any legal process, or (3) the administrator may have no knowledge of its existence. In these circumstances, considering the manifest intention of the Legislature to lay a privilege tax upon the right of one to acquire property by gift or inheritance, and the further fact that all privilege taxes may be collected in a summary proceeding, as provided in Chapter 200 of the Acts of 1937, we are constrained to follow the rule of construction that will enable the State to collect the tax, rather than one that would favor the appellant in evading it.

In the case of *English* v. *Crenshaw,* 127 Am. St. Rep., 1083, we find exhaustive notes, wherein it is said:

"It is the purpose of such statutes to preclude, as far as possible, this evasion of taxation, whether with fraudulent intent or not, and to secure to the State its revenue on all transfers which have their occasion in the death of the transferrer." *In re Estate of Keeney,* 194 N. Y., 281, 87 N. E., 428, 128 Am. St. Rep., 543.

In considering any tax statute the courts cannot overlook the fact that all taxes are levied solely for the purpose of maintaining the sovereignty of the State. The State cannot exist without revenue to support its

authority. Hence, "Not only the final purpose of the law must be considered, *but the means of its administration—the ways it may be defeated.*" (Italics ours.) *St. John* v. *People of State of New York,* 1906, 201 U. S., 633, 26 S. Ct., 554, 555, 50 L. Ed., 896, 5 Ann. Cas., 909.

■ ■ It is earnestly contended by appellant that the issuance of the distress warrant by the Commissioner and the levy upon and sale of her property without formal notice and a hearing is in violation of Article I, Section 8, of the Constitution of Tennessee, and of the Fourteenth Amendment of the Constitution of the United States. The legal question thus raised was presented in *Fort* v. *Dixie Oil Co.,* 170 Tenn., 183, 93 S. W. (2d), 1260; *Gilmore Holding Corp.* v. *Stokes,* 177 Tenn., 561, 564, 151 S. W. (2d), 1079, *Smallwood* v. *Gallardo,* 275 U. S., 56, 48 S. Ct., 23, 72 L. Ed., 152, and expressly decided against the contention of the appellant. Moreover, we think Code, sections 1790 et seq., meet all the requirements of due process in tax cases.

No one can deny that the due process clause of the Constitution requires that the delinquent taxpayer be given an opportunity for a hearing at some stage in the proceeding. *Stockton* v. *Morris & Pierce,* 172 Tenn., 197, 110 S. W. (2d), 480. The Code sections above referred to afford the taxpayer an opportunity for a legal hearing in all cases where there is an attempt to collect revenue illegally. Sections 1792 and 1794 provide:

(Sec. 1792) "Such taxpayer may sue the collector.— The person paying said revenue may, at any time within thirty days after making said payment, and not longer thereafter, sue the said officer having collected said sum, for the recovery thereof."

(Sec. 1794) "No other remedy for taxpayer.—There shall be no other remedy in any case of the collection

of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by said officer under the law, the same being other or different funds than such as the taxpayer may tender, or claim the right to pay, than that above provided.''

In *Gilmore Holding Co.* v. *Stokes, supra.* [177 Tenn., 561, 151 S. W. (2d), 1080], it is said, opinion by MR. JUSTICE DEHAVEN:

''Under the above provision [Code section 1790 et seq.] an opportunity is afforded, and a remedy granted, to a taxpayer to challenge the assessments made by the Commissioner upon all questions of law and fact with reference to the illegality of the tax imposed.''

It is unnecessary to quote from the opinion of the CHIEF JUSTICE in *Fort* v. *Dixie Oil Co., supra*, wherein it was held that Chapter 44, Acts of 1873, and carried into the official Code of 1932, provided an adequate remedy.

Under our authorities the procedure adopted by the Commissioner of Finance and Taxation, while summary in nature, was fully justified, and the appellant cannot be heard to question either the amount of the tax or the levy and sale. She came into possession of the property by way of inheritance and must have known that she was liable for the tax under our inheritance tax law. The statute provided her an adequate remedy whereby she could have a hearing, not only as to the amount of the tax, but the legality of the assessment. If we should sustain appellant's assignment of error it would result in compelling the State to go into court and litigate with all taxpayers as to the amount of every assessment, as well as the validity of the act under which it is levied. In these circumstances the courts would become the final arbiter of the State's right to exercise its

sovereign authority. It is true that there was no judgment in the instant case upon which an execution could issue, but there was a legal obligation due the State from the taxpayer, i. e., to pay a privilege tax, and the Commissioner proceeded in a manner authorized by law to enforce this obligation. We think it was as much the duty of the taxpayer to take notice of the obligation as it was to take notice of the privilege of receiving property by gift or inheritance.

 Complaint is made that the distress warrant was levied upon real estate which was never a part of the estate of the decedent, and for this reason was unauthorized. The return of the sheriff shows that there was no personal property of defendant to be found in Davidson County. Naturally, the question arises as to what became of the estate received by the defendant. If it became commingled with other property, or could not be found, or was otherwise placed beyond the reach of legal process, the State cannot thereby be denied its right to its revenue. To hold otherwise would be tantamount to conferring upon taxpayers the right by fraudulent design to defeat the collection of a valid legal obligation.

We have carefully considered every assignment of error and feel that they should be overruled and the judgment of the Circuit Court affirmed.