MITCHELL *et al. v.* CARSON, COMMISSIONER OF FINANCE AND
TAXATION.

(*Nashville*, December Term, 1947.)

Opinion filed February 28, 1948.

MEACHAM & MEACHAM, of Chattanooga, for appellants.

ROY H. BEELER, Attorney-General, WILLIAM F. BARRY, Solicitor-General, and HARRY PHILLIPS, Assistant Attorney-General, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Miss Jessie Mitchell, a resident of Tennessee, purchased United States Savings Bonds to an extent quite substantial in amount. Some of them were payable at her death to specified nieces and nephews. All the others were payable to herself or these same nieces and nephews. Miss Mitchell retained possession of these bonds until her death. They were then delivered to these nieces and nephews and did not become a part of her estate.

Mr. Carson, Commissioner of Finance and Taxation, was of the opinion that the transaction above stated was a taxable transfer under the Tennessee Inheritance Tax Law. This law is chapter 29 of the Extra Session of 1929, and is carried in code commencing at section 1259. Accordingly, the Commissioner exacted payment of the tax. The executors of Miss Mitchell paid under protest and then instituted this suit to recover the amount paid. They have appealed from the decree of the Chancellor sustaining the Commissioner's demurrer, thereby holding that the transaction is a transfer taxable under this law.

Considered in logical order, the first insistence of the executors is that "an inheritance tax is not imposed upon government bonds by section 1259 et seq. of the code." Section 1259 provides that "a tax is imposed . . . upon transfers . . . of the following property . . . when the transfer is from a resident of this state. (1) Real property . . . (2) Tangible personal property, except such as has an actual situs without this state. (3) All intangible personal property." This language is all comprehensive and, therefore, includes United States Savings Bonds. As observed by the Chancellor, any other construction would enable the purposes of the act to be defeated by the simple pro-

cess of investing large estates in government bonds in order to avoid the tax. In *Bergeda* v. *State*, 179 Tenn. 460, 167 S. W. (2d) 338, 340, 144 A. L. R. 696, this Court while considering this same act said: "We must give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act," and further observed that " 'not only the final purpose of the law must be considered, but . . . the ways it may be defeated.' " We necessarily conclude that an inheritance tax is imposed upon government bonds by this law.

 It is next contended that Congress has prohibited states from imposing a tax on these bonds in order that the borrowing power of the Federal Government may be maintained to its fullest extent. The prohibition mentioned is to the assessment of an *ad valorem* tax upon government bonds. Our Inheritance Tax Law is not a tax upon these bonds. It is a tax upon the privilege of acquiring them by transfer within the provisions of that law. *Hutchison* v. *Montgomery*, 172 Tenn. 375, 384, 112 S. W. (2d) 827; *Bergeda* v. *State, supra; State* v. *Alston*, 94 Tenn. 674, 681, 30 S. W. 750, 28 L. R. A. 178. Therefore, the applicable rule is that stated in 28 American Jurisprudence, page 52, as follows: "A state may tax a bequest of United States bonds. This is true, even though the bonds on their face declare, in the terms of the act authorizing their issuance, that they are exempt from state taxation in any form, since such provision is regarded as relating exclusively to *ad valorem* or other direct taxes on property."

██ ██ Appellants insist that an inheritance tax upon these bonds is likewise prohibited by necessary implication, in that the imposition of the tax "would be in vio-

lation of the sacred right of contract.'' In support of this insistence appellants say that ''if an inheritance tax must be deducted these beneficiaries would receive less than the government agreed to pay,'' and that this is a violation of the contract which the government made with the decedent. Parenthetically, we take occasion here to acknowledge the very substantial assistance which has been given us in this case by the splendid briefs on each side. We are not, however, able to follow the reasoning of appellants in support of the insistence just stated. The Congressional Act codified as sections 747 and 757d under Title 31 expressly excepts inheritance taxes from the prohibition against state taxation of these bonds, thereby affirmatively manifesting a legislative intent to permit inheritance taxes upon such bonds. The government and the decedent are presumed to have had this in mind when entering into the contract to which appellants refer. Moreover, the appellants did receive the bonds after the death of Miss Mitchell and the amount the government will pay is not decreased thereby. We are unable to detect any interference with the contract referred to.

The final point sought to be made is that the transaction under consideration was not ''a transfer taking effect at death of purchaser, and subject to the state inheritance tax . . . '' (1) ''because said bonds . . . did not form part of decedent's . . . estate,'' but (2) ''vested in the named beneficiaries immediately upon issuance.''

■ It is a fact that these bonds did not form a part of Miss Mitchell's estate. This, however, did not make inapplicable to this property the provisions of the Inheritance Tax Law. *Bergeda* v. *State, supra.* If it were

otherwise, this law could very well become a dead letter for all practical purposes.

The statement that these bonds vested in the beneficiaries named therein "immediately upon issuance" is not entirely accurate from a practical point of view. As stated in appellants' brief there was reserved to Miss Mitchell the "right of cashing them during life" so long as they remained in her possession. This, no doubt, is responsible for the further statement of appellants that the beneficiaries took a vested interest "subject only to be defeated by the purchaser cashing them during her life time" if they remained in her possession, as they did. Nor did the beneficiaries have any right to demand of Miss Mitchell that she surrender possession. So, as to the question involved in this suit two controlling facts exist, to-wit: (1) Miss Mitchell owned an interest in these bonds which at her option was determinable only by her death, and (2) by reason of the retention (which we must presume was intentional) of possession by Miss Mitchell, the possession and enjoyment of these bonds by the beneficiaries took effect only upon the death of Miss Mitchell. These two facts bring these bonds squarely within the provisions of our Inheritance Tax Law.

In *Baker* v. *McCanless*, 177 Tenn. 571, 575, 151 S. W. (2d) 1082, 1084, this Court, after calling attention to the title of the act, said: "The tax is imposed 'on transfers of property . . . intended to take effect in possession or enjoyment at or after death . . .' That is to say, the tax is on the transfer of possession and enjoyment." The retention of possession by Miss Mitchell until her death conclusively establishes it to have been her intention that the ownership of these bonds by the beneficiaries should take effect in possession or enjoyment upon her death.

Code Section 1260(e) provides that "a transfer of property subject to any charge, estate or interest, determinable by the death of the decedent . . . shall be deemed to have been intended to take effect in possession or in enjoyment at or after death." The interests of Miss Mitchell in these bonds was determinable, at her option, only by her death.

Code Section 1261 provides that "whenever property was held jointly by the decedent and one or more persons as joint tenants . . . or otherwise . . . , so that, upon the death of the decedent, the survivors became entitled to the immediate possession, ownership or enjoyment of such property, there shall be included for taxation such part as may be clearly shown to have belonged to decedent . . . " These bonds were paid for entirely by decedent. The beneficiary survivors became entitled to the possession, ownership and enjoyment thereof immediately upon her death, but not prior thereto.

By the express provisions of the code sections above quoted, this transaction was a transfer taking effect in possession, ownership and enjoyment at the death of the purchaser, Miss Mitchell. The bonds were, therefore, subject to the State Inheritance Tax, as decreed by the Chancellor.

Affirmed with costs adjudged against appellants.

All concur.