MURFREESBORO BANK & TRUST CO. *et al. v.* EVANS.

*(Nashville,* December Term, 1950.)

**Opinion filed July 27, 1951.**

Rehearing denied August 31, 1951.

WALLER, DAVIS & LANSDEN, of Nashville, for appellants.

ROY H. BEELER, Attorney General, WILLIAM F. BARRY, Solicitor General, and MILTON P. RICE, Assistant Attorney General, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal from the Chancellor's decree involves the liability of a surviving spouse for payment of an inheritance tax upon property which had been conveyed to the husband and wife as tenants by the entireties, the husband having paid for the property wholly out of his own funds, the surviving wife having paid nothing.

It is stipulated that Mr. and Mrs. Allen T. Ragland acquired the property by deed from Mrs. J. M. Overton. A substantial cash payment was made by Mr. Ragland at the time the deed was passed and notes for deferred payments were signed by both Mr. and Mrs. Ragland. At the time of Mr. Allen Ragland's death the property was valued at $67,000. The tax collected by the State was upon the total value of the property upon the theory that Mr. Ragland was the owner at the time of his death. The executor of the estate of the deceased filed a bill in the chancery court to recover one-half of the tax paid, the same having been paid under protest. The Chancellor dismissed the bill, and an appeal was prayed and granted to this Court.

The sole question to be decided is found in the following assignment of error: "The Chancellor erred in dismissing the complainants' bill at their cost and in failing and refusing to grant the recovery of one-half of the inheritance tax and interest thereon as prayed for."

The statute, under which the tax levy was made, is Code, Section 1261 and reads as follows: "1261. *Property held jointly.*—Whenever property was held jointly by the decedent and one or more persons as joint tenants or tenants by the entirety or otherwise or was deposited in banks or other depositories in the joint names of the decedent and one or more other persons and payable to one or more, or to the survivor or survivors, so that, upon the death of the decedent, the survivor or survivors became entitled to the immediate possession, ownership or enjoyment of such property, there shall be included for taxation such part as may be clearly shown to have belonged to decedent . . ."

It appears that prior to May 22, 1942, the Department of Finance and Taxation assessed for inheritance taxa-

tion only one-half of the value of property held by a decedent and spouse as tenants by the entireties, regardless of whether the property was purchased with money belonging to the husband or the wife. On the above date Hon. Harry Phillips, who at that time was Assistant Attorney General of the State, gave the Department the following written opinion:

"In summary, you are advised that:

"(1) If the decedent furnished the entire purchase price or all the funds represented in the joint estate, the entire property should be included in the gross estate for inheritance taxation purposes; (2) if the decedent furnished only a part of such funds, only a corresponding portion of the property should be so included; (3) if the decedent, prior to the acquisition of the property as joint tenants or tenants by the entirety, gave the other tenant a sum of money which later became the other tenant's contribution to the property, the entire property should be included for taxation; (4) if the decedent furnished no part of the purchase price or the funds jointly held, no part of the property should be included for taxation in his estate; (5) if the decedent and spouse acquired the property by will or gift as tenants by the entirety, or if both contributed to the purchase price and the amount of the contribution of each is unascertainable, one-half of the property should be included; (6) if the property is so held that it was subject to the individual control, appropriation and use of the decedent, a prima facie case of decedent's ownership of the entire property is thereby established, and the burden of proof is on the surviving tenant to furnish satisfactory evidence to the contrary."

The foregoing opinion has been uniformly followed by the Department of Finance and Taxation since that time

in all cases involving property owned as tenants by the entireties, including both real and personal property.

It is contended by appellants that ''great weight should be given to the contemporaneous and consistent administrative construction of the statute for the twelve year period from the date of its enactment to May 22, 1942,'' and ''no weight should be given to the subsequent inconsistent construction'', citing authorities. *Sims* v. *Carter*, 173 Tenn. 263, 265, 116 S. W. (2d) 1031; *Chattanooga Plow Company* v. *Hays*, 125 Tenn. 148, 155, 140 S. W. 1068; and *Tennessee Gas Co.* v. *McCanless*, 184 Tenn. 387, 391, 199 S. W. (2d) 108. The rule is only to be considered when there is doubt as to the proper construction of the statute, or when it is ambiguous. Moreover the contention is not meritorious in that we are asked to give greater weight to the ruling of the Department of Finance and Taxation, acting without legal advice prior to 1942, and what appears to be the well considered opinion of the Attorney General's office, which for the first time had been asked to construe the statute. In *Tennessee Gas Co.* v. *McCanless*, supra, the construction given the tax statute involving butane gas was interpreted by three successive Commissioners of Finance and Taxation, and the statute was thought to be more or less ambiguous.

The cases cited and relied on are not controlling in the case at bar for the reasons: (1) Code, Section 1261 is not ambiguous; (2) the doctrine of estoppel cannot be invoked against the State; (3) conceding, but not deciding, that the Department has not been consistent in its interpretation of the statute the State is not concluded thereby; and (4) the construction of the statute, which was given by the Attorney General on May 22, 1942, and consistently followed by the Department since that

time, should be given persuasive weight by the Court, and especially so in view of our holding in *Mitchell* v. *Carson,* 186 Tenn. 228, 209 S. W. (2d) 20, wherein the opinion of the Attorney General was, in substance at least, approved.

The inheritance tax statute is not a tax levied upon property, whether real or personal, but it is a *privilege tax upon the right to inherit property.* *Hutchison* v. *Montgomery,* 172 Tenn. 375, 112 S. W. (2d) 827; *Baker* v. *McCanless,* 177 Tenn. 571, 151 S. W. (2d) 1082; *Mitchell* v. *Carson,* 186 Tenn. 228, 209 S. W. (2d) 20; and *Bergeda* v. *State,* 179 Tenn. 460, 167 S. W. (2d) 338, 144 A. L. R. 696.

While the case of *Mitchell* v. *Carson,* supra, is not entirely analogous to the instant case the holding is clearly applicable here. In that case Miss Mitchell had purchased U. S. Bonds in substantial amounts. Some of them were payable at her death to certain nieces and nephews. All others were payable to herself or these same nephews and nieces. She retained possession of them until her death. It was held (Justice Tomlinson speaking for the Court) the bonds were subject to the State Inheritance Tax, Code, Section 1261. It was insisted "that the bonds did not form a part of decedent's estate but vested in the named beneficiaries immediately upon issuance." The Court ruled as follows: "It is a fact that these bonds did not form a part of Miss Mitchell's estate. This, however, did not make inapplicable to this property the provisions of the Inheritance Tax Law. *Bergeda* v. *State,* supra. If it were otherwise, this law could very well become a dead letter for all practical purposes." [186 Tenn. 228, 209 S. W. (2d) 22.]

We come now to the contention of appellant that the inheritance statute does not apply because the property

was in reality that of Mrs. Ragland because the payment of the notes by Mr. Ragland amounted to a gift of the property inter vivos; that it should at least be regarded as a gift to her of his one-half interest. This, however, is only a conclusion of able counsel for the appellants.

It is undoubtedly true that if Mrs. Ragland was the owner of the property at the time of Mr. Ragland's death the state would have no right to collect an inheritance tax. But we are not justified in holding that the payment of these notes by him evidenced an intention to divest himself of ownership and vest it in his wife. Had he survived Mrs. Ragland her heirs could lay no claim to the property, and under the statute there would be no right in the State to collect an inheritance tax. The statute expressly provides that in case of joint tenancy when "the survivor . . . became entitled to the immediate possession, ownership or enjoyment of such property, *there shall be included for taxation such part as may be clearly shown to have belonged to decedent*".

We think the States's right to collect the tax is foreclosed, our conclusion being based on the stipulation that the decedent paid for the whole property and "Mrs. Ragland paid nothing." What better evidence could be offered of ownership, or that the property *"belonged to decedent,"* than that the latter paid for it. The right of Mrs. Ragland to "immediate possession and enjoyment" of the *whole estate* was by virtue of her survivorship and she became thereby vested with the whole by operation of law. The tax is imposed upon her right to receive it.

We have refrained from discussing many cases cited on the briefs of counsel believing that the cases to which we have referred are controlling. The assignments of error are overruled and the Chancellor's decree is affirmed.

All concur.