RAFAEL A. VEVE ET AL., Plaintiffs, Appellees and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant, Appellant and Appellee.

No. 11103. Argued April 5, 1954.—Decided October 7, 1955.

696

*Félix Ochoteco,* Jr., for appellees-appellants. *José Trías Monge, Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General,* for appellant-appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court in a suit by the plaintiffs, as sole and exclusive heirs of Jorge Bird Arias, against the Secretary of the Treasury for inheritance taxes imposed under Act No. 303, Laws of Puerto Rico, 1946. The first item involves the refusal of the Secretary to allow the plaintiffs a credit under § 5(a) of the Act for $13,761.15, the amount of federal estate taxes paid to the Federal Commissioner. Here, unlike the situation in *Emanuelli* v. *Secretary of the Treasury,* decided today, *ante,* p. 687, the plaintiffs filed with the Commissioner a petition for refund, which had not been decided at the time of the hearing in the trial court. The Secretary has appealed from the judgment insofar as it sustains the right

of the plaintiffs to this credit, provided that ". . . the refund shall be made when the plaintiffs show in definitive form that they have no right to the claim for refund filed with the Commissioner of Internal Revenue of the United States, unless the Secretary of Treasury, by bond or in some other manner in agreement with the plaintiffs, provides another method to effect such refund." For the reasons stated in the *Emanuelli* case, we find no error in this action of the Superior Court. *Cf.* § 5(*c*) of Act No. 303.

 The Secretary argues that the plaintiffs have not sustained the burden of the tax, as required by Act No. 232, Laws of Puerto Rico, 1949, because they have petitioned for refund of the federal estate tax. The answer to this contention is that the plaintiffs will receive no credit under § 5(*a*) for the Federal tax if a refund is finally made of the latter; it is only if the plaintiffs truly suffer the burden of the Federal tax by ultimate denial of the petition for refund thereof that they will be allowed a credit for it under § 5(*a*). We find untenable the Secretary's argument that a cause of action for the credit would accrue for the first time when the petition for a refund of the Federal tax was finally denied. The cause of action, if any, accrued when the facts occurred. The only effect of the subsequent action of the Federal Commissioner and the Federal courts will be to recognize whether or not the cause of action has always existed.

█ The Secretary contends that to the extent that community property is involved the credit for the federal estate tax—paid on the entire estate—should be allowed only in the amount the Federal tax was paid on property really inherited and therefore there should be no credit for that part of the federal estate tax, if any, paid on the widow's share of the community property. This is another phase of the argument we rejected in *Emanuelli* v. *Secretary of the Treasury*, decided today. We pointed out in the *Emanuelli* case that under § 5(*a*) the Legislature intended that

credit for the federal estate tax be allowed despite the fact that the estate—and not the individual heirs as in our statute —is responsible for the Federal tax. In the same way here, the test is whether a Federal transfer tax was paid. If so, under § 5(a) a credit is allowed therefor to the heirs, despite the difference between the two Acts in their objects and mechanics.

We therefore find no merit in the Secretary's appeal from the judgment insofar as it tentatively allows a credit under § 5(a) for federal estate taxes, subject to a showing in the future by the plaintiffs that their claim for refund of the Federal tax was definitively rejected by the Federal courts. The plaintiffs in turn have appealed from the judgment insofar as it held that they were subject to our inheritance tax for various United States bonds which were issued in the name of the decedent or one of his heirs.[1]

■■ Federal statutes and regulations provide that if the United States bonds herein are issued in the name of two persons in the alternative, the survivor shall be the exclusive owner. We have held, in accordance with the great weight of authority, that these Federal statutes and regulations—as a part of the loan contract between the purchaser and the Federal Government—are controlling; and consequently that upon the death of one of the payees the survivor is the sole owner of the bonds, to the exclusion of the decedent's heirs. *Ex parte de Jesús*, 68 P.R.R. 646; 31 U.S.C. § 757c; 31 Code of Federal Regulations, 1955 Supp., §§ 315.1, 315.45(c); *Annotation*, 37 A.L.R.2d 1221.

■■ However, there is no dispute here as to ownership: it is conceded that the plaintiffs—the survivors—are the sole

---

[1] These bonds were issued in the name of Jorge Bird Arias or Manuela Cerra de Bird; Jorge Bird Arias or Jorge Bird Cerra, etc. The record does not disclose the amount of the tax attributable to inclusion of the bonds in the inherited property as this item was lumped with an item in connection with the proceeds of insurance policies and the plaintiffs have desisted from their appeal as to the latter. The claim for refund as to both items amounted to $23,849.80.

owners of the bonds. Rather the problem is whether the plaintiffs are required to pay our inheritance tax on the transmission to them of the bonds by virtue of the death of Jorge Bird Arias, the other person who was listed with each of them in the alternative as owner. This is a new question not yet determined in this jurisdiction. And the decisive point for that purpose is not that the plaintiffs are now exclusive owners of the bonds but how they became the owners.

The Federal Constitution does not prohibit inclusion of United States bonds in calculating a state inheritance tax. The theory is that the tax is on the right or privilege to receive the property, and not on the property itself. *Plummer* v. *Coler*, 178 U.S. 115; *Mitchell* v. *Carson*, 209 S.W.2d 20, 21 (Tenn., 1948); *Waddell* v. *Doughton*, 140 S.E. 160 (N.C., 1927); Annotation, 39 A.L.R. 2d 699, 701–2; see I Paul, *Federal Estate and Gift Taxation*, § 4.10, pp. 202–5. And the pertinent Federal statutes and regulations specifically recognize the right of the state to impose inheritance taxes on United States bonds. 31 U.S.C. §§ 747, 757 (*d*); *Succession of Raborn*, 29 So.2d 53 (La., 1946); *Hallett* v. *Bailey*, 54 A.2d 533 (Me., 1947); *Mitchell* v. *Carson, supra;* Annotation, 39 A.L.R.2d 698, 702. Consequently, if the bonds in this case had been issued solely in the name of the decedent, the plaintiffs as his heirs would have been subject to our inheritance tax. The plaintiffs concede this proposition. But they argue that no taxable event occurred here because the bonds were not a part of the inherited property. We disagree. While the alternate owners are alive payment will be made pursuant to Federal regulations to either co-owner at his separate request upon presentation of the bond, and this payment extinguishes any interest of the other co-owner in the bond. 31 Code of Federal Regulations, 1955 Supp., § 315.45 (*a*). The trial court found that the bonds ". . . were kept by the decedent in his strongbox while he was alive and at no time were put at the disposition or in

the hands of any other person." Consequently, there was no way under the Federal regulations for the plaintiffs to cash these bonds in which they were listed as alternate owners while the decedent was alive; only the latter, in view of his physical control of the bonds, could have received payment for the entire amount of the bonds during his lifetime. It follows that the plaintiffs received effective rights as owners of the bonds for the first time by virtue of the decedent's death. And property transmitted to donees due to the death of the donor are subject to our inheritance tax under the broad terms of § 1 of Act No. 303.

The cases upholding their rights as exclusive owners of the bonds on which the plaintiffs rely in their brief are not in point. The problem here is not ownership but taxability of the transfer. And on this question all the cases we have found are in accordance with our view. Where as here, in the absence of testimony as to fraud and other pertinent questions, under Federal regulations (1) United States bonds are issued in the name of alternate owners; (2) the payee in possession of the bonds may cash them to the exclusion of the other payee; (3) the bonds remain in the exclusive possession and control of one of the payees until his death; and (4) the survivor is vested for the first time with effective rights of ownership by virtue of the decedent's death, the survivor is liable for state inheritance taxes thereon. *In Re Rummel's Estate*, 49 N.W.2d 380 (S.D., 1951); *Watkins v. Shaw*, 65 S.E.2d 881 (N.C., 1951); *Mitchell v. Carson, supra; In Re Myers' Estate*, 60 A.2d 50 (Pa., 1948); *State Board of Equalization v. Cole*, 195 P.2d 989 (Mont., 1948); *Hallett v. Bailey, supra; Succession of Raborn, supra;* Annotation, 39 A.L.R.2d 698, 707. If more be needed, the federal estate tax is imposed in continental United States on the survivor under the circumstances herein. See 3 P–H 1952 Fed. Tax Serv., Par. 23,237; I

Paul, *supra*, § 4.10, p. 205. The same basic principle applies to make the survivor subject to our inheritance tax.[2]

The remaining question is whether the plaintiffs are liable for inheritance taxes on one-half or on the full value of the bonds. We agree with the cases holding that under the circumstances of this case the tax is imposed on the entire amount of the bonds. *State Board of Equalization* v. *Cole*, *supra*, pp. 995–7; *In Re Myers' Estate*, *supra*; *Watkins* v. *Shaw*, *supra*; *Mitchell* v. *Carson*, *supra*; Annotation, 39 A.L.R.2d 698, 709–11. See *In Re Marsh's Estate*, 234 P.2d 459 (Mont., 1951) ; *United States* v. *Jacobs*, 306 U.S. 363. We have already seen (1) that the survivor had no effective right to receive anything while the decedent was alive because the latter, while in exclusive possession and control of the bonds, was the only person entitled to cash the bonds, and (2) that the death of the alternate owner was the decisive act in vesting exclusive title to the entire amount of the bonds in the survivor. A taxable transfer to the plaintiffs of the full value, not merely one-half, of the bonds therefore occurred when Jorge Bird Arias died.

The judgment of the Superior Court will be affirmed.

Mr. Justice Sifre did not participate herein.

Mr. Justice Belaval dissented.

---

[2] In *Watkins* v. *Shaw, supra,* the Court in a similar case said at p. 883: "We think the provision in the bonds with respect to ownership, constitutes a gift or transfer from Dr. Watkins to his wife, intended to take effect in possession or enjoyment at or after his death, in the event the bonds were not surrendered prior thereto. And since the bonds were not surrendered for payment or reissue prior to the death of Dr. Watkins, upon his death the title to the bonds passed by succession to Mrs. Watkins, under the terms of the contract pursuant to which they were issued." And after citing the cases on which we rely herein, the court added at p. 883: "We know of no authoritative decisions to the contrary."