303 S.W.2d 326 (1957)
MOTO-PEP, Inc.
v.
John W. McGOLDRICK, County Court Clerk of Shelby County, Tennessee, et al.
Supreme Court of Tennessee.
May 3, 1957.
Rehearing Granted June 7, 1957.
George F. McCanless, Attorney General, Allison B. Humphreys, Solicitor General, Milton P. Rice, Assistant Attorney General, for appellants (defendants).
Robert M. McRae, Jr., Memphis, Charles G. Neese, Paris, Apperson, Crump, Duzane & McRae, Memphis, of counsel, for appellee (complainant).
NEIL, Chief Justice.
This case presents the question of whether one operating an "oil depot" within the meaning of Item 71(a), Section 67-4203, T.C.A. (Section 1248.2 Item 71, 1950 Code Supplement) is liable for the privilege tax levied thereby based upon the total gallonage of petroleum products sold, used or otherwise distributed or stored, including the gallonage delivered directly from the depot's suppliers to its customers without ever coming to rest in or passing through the depot's storage tanks.
*327 The complainant corporation (Moto-Pep, Inc.) paid the privilege tax assessed against it and filed its original bill to recover it as provided by the statute.
The defendants filed an answer to the bill, admitting the truth of certain charges and making denial as to others.
The determinative issue is based upon the following stipulation of facts between the parties. It appears on the State's brief and, since it is admitted to be correct by opposing counsel, it is copied in full, as follows:
"The complainant is a Tennessee corporation (Tr. 16) engaged in the business of selling at wholesale petroleum products in the City of Memphis and surrounding area, (Tr. 17) one of its activities being the sale of gasoline in wholesale quantities to retail dealers and large consumers thereof, and the delivery of same to such customers. (Tr. 17) Defendant McGoldrick was at the time of the institution of this suit the duly elected and qualified County Court Clerk of Shelby County. (Tr. 16) Defendant Atkins was the duly appointed and qualified Commissioner of Finance and Taxation of the State of Tennessee, while defendant Beeler was the duly appointed and qualified Attorney General of the State of Tennessee. (Tr. 16) Defendants McGoldrick and Atkins are charged by law with the collection of the privilege taxes levied by the General Revenue Act of Tennessee, same being Section 67-4201 et seq. T.C.A. (Section 1248.1 et seq. 1950 Code Supplement), which Act includes in Item 71(a) thereof the tax here in question. Defendant McGoldrick's duties include the collection of said tax on behalf of both the State of Tennessee and Shelby County, which is empowered under the said Act to duplicate the said tax, while defendant Atkins has the duty of administering the tax in question as well as other State taxes on behalf of the State of Tennessee.
"Complainant maintains at 432 North Dunlap Street in the City of Memphis a bulk plant which concededly falls within the definition of an `oil depot' as set forth in Item 71(a), and has paid a privilege tax for the maintenance of the said oil depot each year since the enactment of the General Revenue Act in 1937. (Tr. 19)
"During the periods July 2, 1946 to July 2, 1947, July 2, 1948 to July 2, 1949, July 2, 1949 to July 2, 1950, and July 2, 1950 to July 2, 1951, certain amounts of complainant's products were delivered to complainant's customers by automotive transports from certain oil depots on or near the Mississippi River in Shelby County to complainant's purchasers without said products ever coming into complainant's oil depot. (Tr. 20) Complainant did not include this gallonage in the amount upon which its own oil depot privilege tax was based, that is complainant did not list this gallonage as sold, used or otherwise distributed or stored by it. (Tr. 20) Complainant included in its tax base only such gallonage as actually passed through its own storage tanks and did not include in its tax base that delivered directly from its suppliers to its customers. (Tr. 20) Such direct deliveries are agreed to be a common and increasing practice in the gasoline industry. (Tr. 21)
"On January 28, 1953 complainant was billed for an additional oil depot privilege tax for the years in question for additional amounts based upon the gallonage sold by it but not actually passing through its storage tanks. (Tr. 19-20) The total amount of the additional tax assessed was $850.00 in State tax, a like amount in county tax and a $4.00 clerk's fee, making a total *328 of $1704.00. (Tr. 20) This amount complainant paid under protest and instituted this suit for the recovery thereof, which suit represents the first and only challenge of the State's position on this question since the enactment of the taxing item in question. (Tr. 22)"
The Chancellor sustained the bill, ordering refunded the tax paid under protest.
The defendants appealed and filed the following assignment of error:
"The learned Chancellor erred in finding and decreeing that complainant is required to pay the oil depot tax provided for in Item 71(a), Section 67-4203 T.C.A., only upon the basis of gallonage of petroleum products actually passing through its storage tanks, and in holding that complainant is entitled to exclude from the measure of the tax petroleum products sold by it and delivered directly from its suppliers to its customers."
The question of complainant's liability for the tax is largely determined by the proper interpretation of Section 67-4203, Item 71(a), T.C.A., relating to the collection of a privilege tax upon "oil depots and wagons". It reads as follows:
"The term `oil depot' as used herein shall be understood to mean a place within this state where petroleum products or substitutes therefor come to rest within this state after movement in interstate commerce or where such products are kept for sale after manufacture or processing in this state, in quantities greater than thirty-one (31) gallons liquid measure. The transfer of such products from a licensed `oil depot' to another location from which wholesale sales are made shall make such location a separate and distinct oil depot.
"Each person having or maintaining an oil depot as above defined, within this state, shall pay a special privilege tax for such place or depot (and shall keep on display to public view at each such place the original or certified copy of receipt showing payment of said special privilege tax) as follows:"
There immediately follows the foregoing provision a graduated list of amounts for which a person, or "oil depot" is liable, based upon the gallons of petroleum products received and distributed. The statute then provides:
"All petroleum products shipped into this state by tank cars or trucks to retail gasoline dealers shall be a measure of the tax imposed by this subdivision, which tax shall be paid by the person actually receiving such products."
It is stipulated that the complainant maintains at 432 North Dunlap Street in the City of Memphis a bulk plant, and it is an "oil depot" as defined in Item 71(a), Section 67-4203, T.C.A., and has paid the privilege tax for this place of operation since the enactment of the General Revenue Act in 1937. This tax was paid upon a gallonage basis, that is upon the number of gallons of petroleum products listed by complainant as stored at this place (432 North Dunlap Street) and distributed therefrom.
It appears from the stipulation that certain amounts of oil products during the years, 1946-1947, 1948-1949, 1949-1950, 1950-1951, were delivered to customers by automotive transports from oil depots on or near the Mississippi River in Shelby County, the same not coming into the complainant's depot on Dunlap Street. The gallonage coming through this depot on the river was not included in the amount of gallonage as listed and upon which the tax was paid. In other words it was not listed "as sold, used or otherwise distributed or stored by it." (Tr. 20)
The defendants insisted that the complainant was liable for this additional tax and complainant was accordingly billed for it. The amount paid was $1,704.
*329 The complainant, appellee here, contends that the Chancellor was correct in holding that it was not liable for this additional tax on the theory that the oil products sold and distributed to customers from the river depot were "direct sales." The complainant's interpretation of Item 71(a) is that products sold and distributed otherwise than from a "licensed depot" are not taxable as a privilege. Thus it is said on the brief of counsel: "* * * when considered from the four corners of the Item the clear and proper import of the wording suggests that the interpretation should be that the selling, using, distributing or storing should apply only to such activities `from or on the premises of an oil depot', particularly for those depots who are liable for the tax by virtue of a transfer from another depot in Tennessee."
The point at issue falls into a very narrow compass. At the expense of repeating we again state the issue. The complaint takes the position that its tax is to be computed only upon such gallonage as actually passes through its storage tanks, while the defendants say that the tax base should include all gallonage of petroleum products sold, used or otherwise distributed, or stored, without regard to whether such products ever came to rest in complainant's storage tanks.
Now the complainant admittedly paid the proper tax upon the gallonage which came to rest and went through its depot on Dunlap Street.
The Chancellor in his memorandum filed with the record resolved the issue in favor of the complainant taxpayer, holding that the tax imposed is upon the privilege of maintaining an "oil depot" as defined in Item 71(a) and that the gallonage which did not pass through such depot could not be allocated to it for the purpose of determining the amount of the tax chargeable to the complainant.
The statute takes cognizance of the fact that there may be more than one oil depot owned by the same person or corporation, and that petroleum products moving in interstate commerce would come to rest at different oil depots. The statute expressly provides: "The transfer of such products from a licensed `oil depot' to another location from which wholesale sales are made shall make such location a separate and distinct oil depot", provided that such products "are kept for sale after manufacture or processing in this state, in quantities greater than thirty-one (31) gallons".
In support of defendant's contention counsel strongly relies upon the following stipulation:
"That, with the exception of the interpretation of the tax by former Commissioner of Finance and Taxation, J.M. Dickinson, on May 1, 1952, to the effect that the oil depot privilege tax was to be measured by the gallonage actually passing through oil depots, which ruling was effective for only five months, from May 1, 1952 to September 29, 1952, but was withdrawn on advice of the Attorney General's Office, the consistent and unbroken interpretation and administration of Item 71(a) by both the Department of Finance and Taxation and the office of the Attorney General has been that the measure of the tax is found in the tax law provisions as follows".
It is also agreed: "The instant suit represents the first and only challenge of the State's position on this question since the enactment of the tax item in question."
The record fails to disclose any rule of the Department of Finance and Taxation which it was duly authorized by law to make and enforce, implementing its interpretation and construction of the statute as insisted upon in the instant case. Section 4-501 et seq., T.C.A.
We come now to the issue of the proper construction of the statute (Item 71(a)).
*330 The authorities are well nigh universal in holding that the words of a statute are to be taken in their natural and ordinary sense, without any forced or subtle construction to limit or extend their import. Phillips & Buttorff Mfg. Co. v. Carson, 188 Tenn. 132, 217 S.W.2d 1; Nashville Electric Service v. Luna, 185 Tenn. 175, 204 S.W.2d 529, and cases cited therein.
It is also settled law in this State that tax statutes will not be extended by implication beyond the clear import of the language, nor will their operation be enlarged by judicial construction. Thus in Britt v. Cook, 157 Tenn. 54, 6 S.W.2d 322, 323, it is held: "Revenue statutes are construed against the government and in favor of the taxpayer; * * * the intention will not be extended by implication, but must be clearly expressed". To the same effect is Chattanooga Plow Co. v. Hays, 125 Tenn. 148, 140 S.W. 1068, the Court further holding: "* * * the doubt must be resolved in favor of the taxpayer." See also Piedmont Oil Co. v. Kennedy, 165 Tenn. 375, 54 S.W.2d 958.
In Chattanooga Plow Co. v. Hays, supra, it is said [125 Tenn. 148, 140 S.W. 1069]:
"The construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration", especially is this so as respects "statutes prescribing penalties, or levying impositions, where the executive construction has been in favor of the persons affected," and acquiesced in by the State authorities.
We are in full accord with the foregoing statement of the rule that courts will give full consideration to the intention of the Legislature and the interpretation of the act by administrative boards whose duty it is to enforce it. Mitchell v. Carson, 186 Tenn. 228, 209 S.W.2d 20; and Bergeda v. State, 179 Tenn. 460, 167 S.W.2d 338, 144 A.L.R. 696.
The decisions are numerous as to rules governing statutory construction, all of which aid the courts to a large degree in deciding the question of legislative intent. While the construction of a statute by an administrative agency (in the case at bar the Commissioner of Finance and Taxation) is persuasive, it is not conclusive as to legislative intent. Certainly not, if the Commissioner has strictly construed the act favorable to the government and against the taxpayer. Such would be contrary to the weight of authority. Collins v. McCanless, 179 Tenn. 656, 169 S.W.2d 850, 145 A.L.R. 1380.
We think that Item 71(a) of the Revenue Act is ambiguous. The strongest evidence of its ambiguity is the disagreement of counsel as to its meaning, the well considered opinion of the Chancellor disagreeing with the defendants' counsel, and the ruling of the Department of Finance and Taxation. At one time, as appears in the stipulation, the ruling of the Commissioner of Finance and Taxation was contrary to the view held by the Attorney General of the State.
The argument is made that the complainant herein has escaped taxation by transporting petroleum products to customers without such products having come to rest at its principle oil depot on Dunlap Street in the City of Memphis. We are now called upon to close this avenue of escape by holding that all such oil products, as a matter of law, are chargeable to its principal depot, and that such was the legislative intent. With all deference to able counsel we cannot agree that such was the intention of the Legislature.
Adverting to the stipulation, supra, that during a period of time (1946 to 1950 inclusive) oil products were delivered to customers of the complainant, Moto-Pep, Inc., from oil depots on the Mississippi River, and hence did not come to rest in the latter's oil depot, we must assume as a fact that these deliveries were made the basis of computing the privilege tax *331 on such river depots, and that the tax was paid. They could not be made the basis for computing the tax liability of complainant in operating its oil depot on Dunlap Street. Moreover the fact that complainant furnished some of its customers with oil products from another oil depot cannot be considered as a questionable transaction. Such transactions might, and doubtless did, affect the tax liability of the oil depots on the Mississippi River since the gallonage passed through such depots. The transaction was nothing more than a method of doing a legitimate business between two oil depots. We cannot say that such sales and deliveries, by force of the statute, served to create an added tax burden upon the complainant. The statute having failed to create such liability we cannot do so under the guise of interpretation.
In giving consideration to an ambiguous tax statute it is the duty of the Court to construe it so as to avoid double taxation. General Refining & Producing Co. v. Davidson County, 139 Tenn. 401, 201 S.W. 737.
Peculiarly applicable to statutes creating a tax liability, as in the case at bar, the settled rule of statutory construction appears to be:
"In the application of a strict construction, the courts refuse to enlarge or extend the law by construction, intendment, implication or inference, to matters not necessarily or unmistakably implied, in order to give the statute full operation. These rules prevail even though the court thinks that the legislature ought to have made the statute more comprehensive." 50 Am.Jur., Sec. 388, pp. 407, 408.
* * * * * *
"Supplying Legislative Omissions. * * * In this respect, it has been declared that it is not the office of the court to insert in a statute that which has been omitted, and that what the legislature omits the courts cannot supply." 50 Am.Jur., Sec. 234, pp. 221, 222.
The purpose of the Act in question is to fix liability upon specific oil depots as distinguished from other places of business engaged in the sale and distribution of such products. "Oil depots" fall into fifteen (15) separate classifications under the statute. Each and every oil depot is required to pay a privilege tax based upon sales, storage and distribution of such products at a particular location. The sale and distribution of such products, otherwise than from its principal plant must be considered as a separate business and taxed as such. Thus Item 71(a) provides (we quote it again for the purpose of emphasis):
"All petroleum products shipped into this state by tank cars or trucks to retail gasoline dealers shall be a measure of the tax imposed by this subdivision, which tax shall be paid by the person actually receiving such products." (Emphasis supplied.)
We construe the foregoing to mean exactly what it says, that is, that the oil products, not coming to rest in complainant's oil depot, but delivered by tank cars or trucks from another source "shall be paid by the person actually receiving such products." This saving clause forecloses any contention that might be made that the aforesaid products are not taxable, the same being shipments in interstate commerce. The parties so receiving such products would be liable as "oil depots" rather than as dealers in oil products assessed under another and different classification.
Under the authorities cited herein we cannot, by judicial interpretation, hold that shipments of oil products into this State, or from points within the State, delivered to customers of the complainant, and not coming to rest in the latter's oil depot, must be allocated to such depot for taxation *332 purposes under Item 71(a), Section 67-4203, T.C.A.
We feel that the Chancellor's decree is correct and should be affirmed. It is so ordered.
TOMLINSON, BURNETT and SWEPSTON, JJ., concur.
PREWITT, J., dissents.

On Petition to Rehear
NEIL, Chief Justice.
The defendants in error, John W. McGoldrick, County Court Clerk of Shelby County, Tennessee, Z.D. Atkins, Commissioner of Finance and Taxation of the State of Tennessee and George F. McCanless, successor in office to Roy H. Beeler, Attorney General of Tennessee, have filed a petition to rehear in this cause complaining only of the decision of the Court in allowing interest upon the judgment in the amount of $370.72, which amount is calculated at the rate of six (6%) per cent per annum upon the principal sum of $1,704 from October 27, 1953.
We think the petition should be granted, and it is so ordered for the reasons stated in the petition, that is, that there was a delay of several years in bringing the case to trial due to the inability of the counsel to agree upon a stipulation of facts. The counsel did not reach an agreement until April 18, 1956, and was fully approved on June 26, 1956, so that after a period of three (3) years the case was ready for trial. As shown by the petition it was not tried until October 2, 1956.
We think the position taken by counsel for the petitioner is sound, and the judgment of the Court will be modified accordingly.