McKinnon & Co. *v*. State *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed July 1, 1939.

A. J. Donelson, of Memphis, for complainant.

Roy H. Beeler, Attorney-General, W. F. Barry, Jr., Assistant Attorney-General, and Lewis S. Pope and Whitworth Stokes, both of Nashville, for defendants.

Mr. Justice Chambliss delivered the opinion of the Court.

The bill was filed to test the liability of the complainant for gasoline privilege taxes.

Complainant is a corporation engaged in handling petroleum products in Shelby County. Distress warrants issued by order of the Commissioner of Finance and Taxation were levied on property of complainant for gasoline privilege taxes claimed to be due and unpaid. Originally other items and larger amounts were involved. Protesting liability for the tax an agreement was made between the parties by which a mortgage was made on the property to secure the tax debt claimed pending deter-

mination of the disputed liability. Since that time, as appears from the pleadings and stipulations, the amount involved had been reduced to $1,405.89 at the time of the disposition of the case below, for which sum the Chancellor gave a decree in favor of the State. Complainant has appealed.

The amount of the decree is not questioned, but liability is denied on the alleged ground that the product sold was not taxable within the terms of the statute, being Section 1, Chapter 20, Public Acts of 1925, Code, section 1126, reading:

"The term 'gasoline' means and includes (a) the volatile substance produced from petroleum, natural gas, oil shales, or coal heretofore sold under the name of gasoline, (b) any volatile substance or product less than 112° Fahrenheit flash test when tested in a manner approved by U. S. bureau of mines, derived wholly or in part from petroleum, natural gas, oil shales, or coal, and (c) benzol and/or any other volatile substance used wholly or in combination with gasoline as a liquid fuel. (1923, ch. 58, sec. 1; 1925, ch. 20; 1929, ch. 124.)"

The insistence of complainant is that the particular product sold by it is known as Stoddard Solvent, a cleaning fluid, and not gasoline, or usable in motor vehicles as a fuel, and especially that it is not a "volatile substance or product less than 112° Fahrenheit flash test," etc. The issue on this point narrowed to this specific question of fact, that is, whether the volatile substance or product sold by complainant flashed less than 112° Fahrenheit. The charge of the bill was as follows:

"Complainant further avers that to the best of its knowledge, information and belief, the substances upon which the taxes were assessed against it, as set forth in

said distress warrants, did not have a flash test of less than one hundred twelve degrees Fahrenheit tested in a manner approved by the United States Bureau of Mines; and further avers that none of said substances were used wholly or in combination with gasoline as liquid fuel."

This allegation the State in its answer denied.

The Chancellor found that the complainant failed to prove that the substance it sold flashed less than 112° Fahrenheit, and that the burden of proof was on complainant to so show.

■■■■ Complainant apparently concedes that the proof does not so show, but insists that the burden of proof was on the State to so show in order to justify the tax. We agree with the Chancellor. The presumption is that the State's representative did his duty and that his levy was justified. Code, section 1137, provides that the Commissioner shall make a statement of tax liability of the taxpayer and this statement is presumed to be correct and the burden of proving its incorrectness is on the taxpayer so asserting. Complainant brings its bill attacking this levy and charges that the fluid or liquid it handled did not flash less than 112° and was not, therefore, within the statute. The burden was on complainant to make out its case in accord with the general rule that the complainant must establish the right to the relief sought. Gibson's Suits, section 441, *et seq.*

Alleged discrimination violative of constitutional rights is also urged. The insistence is that the policy of the Department of Finance and Taxation, in application and enforcement of this tax, has been varied and inconsistent, with the result that others in like situations escaped taxation. It does appear that over some periods since its passage the Department did not construe the

tax as applicable to the product involved, but for and during the period during which this tax liability accrued the ruling of the Department was that the tax applied, and there is no showing of any intentional omission of other taxpayers from taxation.

Moreover, it appears that this question was first fairly raised on petition to rehear before the Chancellor. We quote from his opinion on this petition:

"A new legal question is raised by the petition to rehear. It is said that complainant's rights under the 14th Amendment to the United States Constitution, are violated by the failure of the Commissioner to collect this tax from others that is here sought to be collected from it. That the agreed facts show it is being discriminated against.

"Counsel relies upon a long line of cases cited in *Southern Ry. Co.* v. *Watts,* 260 U. S., 519, 43 S. Ct., 192, 67 L. Ed., 375, 387.

"It is an established rule of the United States Supreme Court that an intentional and systematic difference in assessment of properties of the same class is unlawful even though the complaining taxpayer is not paying one hundred per centum of the amount of tax required by the statute.

"It is necessary, however, that the taxpayer both allege and prove facts showing such intentional and systematic discrimination.

"The presumption lies in favor of the tax assessor that he has acted in good faith without the intention to discriminate and the burden of proving otherwise rests on the taxpayer.

"*Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S., 350, 38 S. Ct., 495, 62 L. Ed., 1154.

"The theory of the bill does not include this proposition of intentional discrimination, but even so, the proof falls short of showing intentional and systematic discrimination.

"The proof goes no further than to show a vacillating and uncertain interpretation of the Commissioner from one period to another in regard to whether cleaning fluids should be included in the measure of tax liability; also that during this period from September 1933 to June 1934 the tax was collected from only a few firms. But at best this is simply a showing of a probable failure to collect from other taxpayers. It is not a showing of an intentional and systematic policy not to collect from others during the period under consideration.

"The petition to rehear is overruled on all grounds."

Counsel for appellant insists that the bill charges facts showing discrimination, although conceding that the charge was not made in terms. We do not agree that the general allegation of the bill to the effect that complainant and other dealers in like products had not been construed or held to be liable for this tax, in accordance with rulings of the Department, is a charge of discrimination against complainant as distinguished from others in like situation. Certainly, during the period within which this tax here involved accrued there was outstanding a clear ruling by the Department that such products, by whomever handled, were taxable.

We find no error and the decree of the Chancellor is affirmed.