TENNESSEE GAS CO. *v.* McCANLESS

(*Nashville*, December Term, 1946.)

Opinion filed January 11, 1947.

Shepherd & Tipton, of Chattanooga, for complainant.

Allison B. Humphreys, Jr., and Harry Phillips, Assistant Attorneys General, for defendant.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents the primary question whether butane, when rendered a liquid and volatile substance only for the purpose of transportation and storage, is taxable under the law imposing a tax on gasoline and other volatile substances, Code, sec. 1126 *et seq.*, and the secondary question whether butane in the same temporary liquefied form is subject to inspection and regulation as one of the fluids set out in Code, sec. 6809 *et seq.* The original bill was filed in the Chancery Court of Davidson County by the Tennessee Gas Company against the Commissioner of Finance and Taxation, to recover taxes paid under protest for the year 1937. The amount of the tax paid under Code, sec. 1127 was $1049.95, and since there had been no inspection under Code, sec. 6809 *et seq.*, the special privilege tax under Code, sec. 1148.1, was paid in the amount of $44.20. The Chancellor decreed that there was no liability for the tax under Code, sec. 1126, but that there was liability for the special privilege tax under Code, sec. 1148.1. Both parties have perfected appeals, assigning error on that part of the Chancellor's decree as to which each was unsuccessful, and both have filed able briefs in support of their respective positions.

For the purpose of the tax imposed under Code, sec. 1126 *et seq.*, the term "gasoline" means and includes:

"(a) The volatile substance produced from petroleum, natural gas, oil shales, or coal theretofore sold under the name of gasoline,

"(b) *any volatile substance or product less than* 112 *Fahrenheit flash test when tested in a manner approved by U. S. bureau of mines derived wholly or in part from petroleum, natural gas, oil shales, or coal,* and

"(c) benzol and/or . . . in combination with gasoline as a liquid fuel." (Italics ours.)

This definition of "gasoline" was enacted by the Legislature of 1925, as Chap. 20, Public Acts of the session of that year.

It will be observed that various "volatile substances" are taxable under the provisions of (a), (b) and (c), *supra*, but since butane has never been sold under the name of gasoline, nor "Used wholly or in combination with gasoline," if taxable under the Act, it must be so under (b) which we italicize.

Inspection and regulations are imposed on the following fluids by Code, sec. 6817 *et seq.*: "All benzol, gasoline, burning oil, distillate, fuel oil, gas oil, kerosene, naptha and/or any other volatile substances reflecting a gravity of sixteen degrees or above on the Baume scale, produced from petroleum, natural gas, oil shales or coal, by whatever trade name known and/or . . . . stored in this state separately or in combination for any purpose whatever, by any user and/or storer, including all subordinate governmental bodies, whether manufactured in this state or not, shall be inspected, under the general supervision of the inspector at large . . . ."

This definition for substances which are subject to inspection is a part of section 1, Chap. 12, Public Acts 1929, and the language in the present Code is identical with the language there. Though there was no inspection in this case and the exacted payment was under the special privilege tax in Code, sec. 1148.1, taxability of the substance is determinable by consideration of the definitions in the Acts of 1925 and 1929, *supra*.

█ Substances subject to the gasoline tax have been the same since 1925, and those subject to inspection the same since 1929, yet so far as this record discloses, taxation and inspection of butane was not enforced by State authorities until shortly before the commencement of the

present suit on May 29, 1942. We are aware of the decision of this Court in *McKinnon & Co., v. State,* 174 Tenn. 619, 130 S. W. (2d) 91, but since after discussing the taxability of butane under the foregoing Code sections three successive Commissioners of Finance and Taxation took no further steps to collect the tax, it is apparent that there was doubt of the application of the foregoing Code sections to butane. In our construction of the statute, that doubt must be considered. *Cummings* v. *Sharp,* 173 Tenn. 637, 122 S. W. (2d) 423; *Collins v. McCanless,* 179 Tenn. 656, 169 S. W. (2d) 850, 145 A. L. R. 1380; *New England Mutual Life Insurance Co.* v. *Reece,* 169 Tenn. 84, 83 S. W. (2d) 238.

Butane, the substance here involved, is a gas emanating from oil wells in the form in which it is ultimately used. It is sufficiently accurate for the purpose of this opinion, to say that oil well products are chemically divided into three classes: (1) The natural gases, one of which is butane; (2) the liquids, among which are gasoline and oil; and (3) the solids, such as paraffin. It is possible, by compression and reduction in temperature, to change the form of the gases from gases to liquids. But since when the abnormal compression is removed and the temperature returned to normal the gases resume their original and natural state without other processing, the chemical classification of the gases remains unchanged whether the gases be in their original and permanent form or whether they be temporarily liquefied.

At temperatures under 30 degrees plus Fahrenheit with compression, butane assumes a liquid form. It is captured at the well as a gas, subjected to a reduction in temperature and compression, run into appropriate insulated and enclosed tank cars and shipped by railroad for storage and distribution. The taxpayer here receives lique-

fied butane at its storage and distribution plants in tank cars, and then distributes it to customers for fuel gas by removing compression and permitting the butane to resume a normal temperature. As the butane resumes its gaseous form, it flows into pipes, is mixed with a suitable percentage of air, and is thus distributed to the ultimate consumer through pipe lines.

Although butane was discovered by chemists in about 1910, it remanded a waste product at the oil wells until the middle 1920s, when, apparently because a more economical and convenient method had been devised for the capture of the gas and its compression, the oil companies commenced to ship butane in small containers to individual customers. The first community distributing system was constructed in a small Indiana town in the year 1928. There was no plant in Tennessee in 1929, but the growth of the industry has been rapid, and is now nation-wide. We now have a number of these butane distributing plants in small towns of Middle and East Tennessee. The complainant here acquired the six plants which it operates in 1932.

With this necessary explanation, we return to the issues of the present suit, and particularly to a consideration of whether the language and provisions of the Code quoted, *supra*, imposing a tax and inspection on gasoline and other volatile substances, evidence a legislative intent to impose a tax and inspection on butane.

The State insists that in the form in which butane, as an oil well product, comes into the State and is delivered to the taxpayer, it is a liquid volatile substance and, therefore, subject to measurement and tax by the gallon. The taxing statute, Code, sec. 1126 *et seq.*, defines "gallon", and it is upon this statutory definition that the amount of the tax is calculated. The Code definition is as follows:

"The term 'gallon' shall mean the amount of gasoline, *at a temperature of sixty degrees (60) Fahrenheit*, necessary to completely fill a standard U. S. gallon liquid measure." (Italics ours.)

At sixty degrees Fahrenheit butane, according to the undisputed evidence in the record, is not a "Liquid volatile substance," but a gas, and as such, is not measurable by the gallon. Further, under section 1126 (b), *supra*, volatile substances taxable thereunder are to be those having "Less than 112 Fahrenheit flash test when *tested in a manner approved by the U. S. bureau of mines . . . .*" Though the flash point of butane is less than 112 degrees Fahrenheit, from two letters introduced from the U. S. Bureau, which are exhibits, it appears that the Bureau "has not approved a method of testing the flash point of liquid butane," and from these letters and other uncontradicted expert testimony, the only reasonable inference is that since butane is distributed and used only as a natural gas and not a liquid and since the only purpose of its liquefaction is convenient and economical shipment and storage, methods of testing liquefied butane for flash point, gravity, purity, etc., have not been devised nor approved by the U. S. Bureau of Mines (secs. 1126, 6819), by the American Society for Testing Materials, nor are any such tests proposed or promulgated by the State Inspector at large (sec. 6809 *et seq.*)

■ Since it is admitted that the flash point of butane is less than 112 degrees Fahrenheit, the State insists that the approval of the U. S. Bureau of Mines is surplusage; and that since other tests for flash point may be made, that the provision of the Act requiring the approval of the, Bureau should be disregarded. For this Court to prescribe regulations for grading a substance to be taxed is beyond the scope of our authority, and is a legislative,

394

not a judicial function, especially when such prescription would in effect, amend specific provisions of a legislative Act already passed.

Likewise, the provisions of sec. 6817 for the determination of the gravity of the inspected product by use of a hydrometer on the Baume scale, is a requirement which could not apply to liquefied butane because it appears from undisputed evidence that such a test was not only extraordinary and unusual as a chemical experiment, but when actually conducted, yielded no result, since butane being a gas artificially liquefied, was too light to support the hydrometer. Of course the gravity of liquefied butane might be determined by other tests, but if butane had been in the intent of the taxing authority, some provision for substituted test would have been made.

At the time the Legislature enacted the definition for gasoline (Ch. 20, Public Acts 1925) and listed the fluids subject to inspection (sec. 1, Ch. 12, Public Acts 1929) the butane industry was in its infancy. As stated, there was only one small distributing plant for the product in the United States. In reason and common sense, to determine legislative intent, the same principle applies to statutes dealing with taxation as to those of a criminal nature (*State* v. *Nashville Baseball Ass'n,* 141 Tenn. 456, 211 S. W. 357, 4 A. L. R. 368) and matters and things which were non-existent at the time of the enactment of a statute will not be read into it merely by implication, because: "It is a well-settled rule of interpretation in this state that statutes levying taxes or duties upon citizens will not be extended by implication beyond the clear import of the language used, nor will their operation be enlarged so as to embrace matters or persons not specifically named or pointed out." *H. D. Watts Co.* v. *Hauk,* 144 Tenn. 215, 218, 231 S. W. 903, 904.

■ We must construe the "volatile substances" of section 1126, and the fluids of section 6817, as being in their normal and natural state. To justify an inference that the Legislature intended to tax a substance in a state of temporary artificial liquefaction, some expression of such intent would have to be made in the statute itself. We think it clear from the language used that the Legislature was dealing here only with such volatile substances, liquids and fluids as were in their normal and natural state, and were at the time of the enactment of the statutes, well known and widely used by the people of the State.

■ Apparently the Chancellor, though he found no liability for the tax, felt bound to hold the complainant liable for the special privilege tax under Code, sec. 1148.1, because of the decision of *State* v. *Nashville, C. & St. L. Ry.*, 176 Tenn. 24, 137 S. W. (2d) 297. In so doing, we think he erred. In the *Nashville C. & St. L. Ry. case*, there was no question of the taxability of the gasoline and other petroleum products imported and stored by the Railroad. All that this Court held in that opinion was that the Gasoline Inspection Statute was a revenue measure and therefore that, despite the admitted fact that no inspection had been made, the Railroad was, nevertheless, liable for inspection fees.

The present case is readily distinguishable. The taxpayer here is not liable for the gasoline tax because butane is not taxable thereunder, and it is not liable for the inspection fees because the "fluids" for which inspection is required are practically identical with the "liquids" on which the tax is imposed.

In so far as the Chancellor decreed that the complainant was not liable for gasoline tax under section 1126 *et seq.* of the Code, his decree is affirmed, and in so far as he held that complainant was liable for the special privilege tax under section 1148.1 of the Code, it is reversed.