WATAUGA VALLEY GAS CO. *v.* EVANS *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed July 27, 1951.

ROY H. BEELER, Attorney General, WM. F. BARRY, Solicitor General, and ALLISON B. HUMPHREYS, JR., Assistant Attorney General, for appellants.

DAN E. MCGUGIN, JR., of Nashville, and WINSTON & GUINN, of Johnson City, for appellees.

414

Mr. Justice Prewitt delivered the opinion of the Court.

In the case of *Tennessee Gas Company* v. *McCanless,* 184 Tenn. 387, 199 S. W. (2d) 108, this Court held that butane and propane gas companies were not liable for inspection fees under the existing law. Following this decision, a number of dealers in butane and propane gas in Tennessee undertook to have these fees refunded in the Miscellaneous Appropriation Bill of 1947. They failed in this, and a statute was enacted in 1949, Chapter 235, Public Acts of 1949, providing that refunds should be made to all concerns who had paid this tax or fees up to $50,000.00. Thereupon, the complainants filed a bill for a declaratory judgment as to the right of the several complainants to recover the inspection fees which had been paid by the complainants to the Commissioner of Finance and Taxation prior to January 11, 1947, which was the date of the opinion in *Tennessee Gas Company* v. *McCanless,* supra.

Although each of the above styled suits were separately filed, all of said suits involved the same legal question. The Chancellor was of the opinion that the Act in ques-

tion was valid and constitutional and a decree was entered for the recovery against the state for the amount of the fees sued for. Similar decrees were entered in each of the succeeding cases. The state appealed and insists that said Chapter 235 of the Public Acts of 1949 is invalid because it violates Article 2, Section 8 of our Constitution in that the classification contained in said Act is arbitrary, unconstitutional and unreasonable and further, that it suspends the general law for the benefit of particular individuals and grants rights, privileges and exemptions to a favored group not extended to other taxpayers under the general law.

It is the contention of the state that there exists no valid reason why the particular class of taxpayers selected in this Act should alone be the recipients of benefits conferred by the Act; that the Act in question is in the nature of special legislation to waive the sovereignty of the state and permit a select group of butane and propane inspection fee taxpayers the privilege of bringing suit against the state.

The state further insists. that the inspection fees in question were not paid under protest nor was any suit brought within thirty days after payment to recover said fees, as provided for under the general law of the state. Code, Sections 1790-1795.

The constitutional provision (Art. 2, Sec. 8) does not prohibit the legislature from making class distinctions in the enactment of law. It prohibits the granting to any individual or individuals rights, privileges, immunities and exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law. *Cavender* v. *Hewitt,* 145 Tenn. 471, 239 S. W. 767,

22 A. L. R. 755; *Stratton Claimants* v. *Morris Claimants,* 89 Tenn. 497, 15 S. W. 87, 12 L. R. A. 70; *DeMoville & Co.* v. *Davidson County,* 87 Tenn. 214, 10 S. W. 353.

■■ The class of persons entitled to benefit by application of Chapter 235 of the Public Acts of 1949 includes all persons who are in a like situation—all persons to whom the state owes the moral obligation to repay money illegally collected as fees.

We think the case of *DeMoville & Co.* v. *Davidson County,* supra, is controlling in the present case. In that case, the state and county had recovered a decree in the Supreme Court against complainants for taxes as liquor dealers in consequence of sales of liquor made by them through a period of five years. After this final decree an Act was passed releasing druggists from the liquor dealers' tax. Executions had been issued on the decree and placed in the hands of the Sheriff of Davidson County. The druggists, relying upon the Act relieving them of liability, filed a bill to enjoin said executions.

The defendants urged that the bill was unconstitutional because in violation of Article 11, Section 8. Justice Lurton, speaking for the Supreme Court, said:

"The first objection urged is that the act is in violation of article 11, sec. 8, of the constitution, which reads as follows: 'The legislature shall have no power to suspend any general law for the benefit of any particular individuals . . . inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law.' This clause 'does not prohibit legislation for the benefit of

classes composed of any members of the community who may bring themselves within the class.' *Davis* v. *State,* 3 [Tenn. 376] 380. But it is argued that all liquor dealers constitute a class, and that this act singles out one portion of the class, to-wit, druggists who have sold for medicinal purposes only, and extends relief alone to them. But druggists are not liquor dealers in any true sense. It is a fact of common knowledge that the sale of liquors for medicinal purposes has until very lately been a recognized part of the ordinary and legitimate business of a druggist, and permissible under the ordinary license of a merchant engaged in the drug business. If a druggist sold liquors as a beverage, he became thereby, in fact, as well as in law, a liquor dealer. The revenue laws of 1881-82 and subsequent years were extended to druggists who sold liquors for any other than sacramental uses. Thus druggists, as a class, eo nomine, were required to pay the liquor dealer's privilege tax if they sold even for medical purposes. These acts were construed and their validity passed upon in the Druggist's Tax Cases, reported in 1 Pickle, 449, [85 Tenn. 449] 3 S. W. 490. The act now under consideration extends relief to all of this class who have made themselves liable to such tax for the years named therein, who have not, by the character of their sales, made themselves liquor dealers in fact; that is, the relief is extended to all of the class of druggists who have sold for medicinal purposes only, while those who have sold as a beverage, and thereby become members of the 'liquor dealer' class, are not relieved.

"The class thus described by the act forms a natural, and not an arbitrary class, and legislation with regard to this class is not for the benefit of individuals within

the meaning of the constitution. But it is said that the act makes no provisions for the return of the tax to such as have paid it, and that it is therefore partial. This might be dismissed with the suggestion that it does not appear that there are any such. But would this be an objection to such an act? This liability, after it was incurred, became a debt due the state, and the relation of debtor and creditor existed. Can the state release or compromise with its debtors? Resolutions and acts releasing bail-bond forfeitures, and compromising or releasing sureties upon the bonds of revenue and other officers, are not uncommon, and their validity has been unquestioned. That the power to settle, compromise, and even release a liability due the state ought to exist somewhere, is most obvious.''

The Court in the DeMoville case then referred to *State v. Burnett,* 6 Tenn. 186 and stated that the act considered in that case was one refunding to the taxpayers of Roane County the state tax on property paid by them upon the assessment for 1864. The decision in that case was put upon the ground that the act undertook ''to donate to certain individuals in Roane County out of the treasury of the state the several amounts paid by them into the treasury in 1864, but confers no such benefit on the other individuals in other counties of the state who had made like payments.''

The Court in that case further said that the result reached in the Burnett case was right; that the tax refunded in that case was a property tax while the tax released in the DeMoville case was a privilege tax.

In the case of *Oehmig v. City of Chattanooga,* 168 Tenn. 618, 80 S. W. (2d) 83, 85, the Court said: ''The principle that a municipal corporation cannot lawfully pay out the

public funds in gifts and gratuities does not go so far as to make unconstitutional a statute authorizing or compelling a municipality to pay debts or claims which could not be enforced in court but which are just and equitable and which the municipality is under a moral obligation to pay."

In 64 Corpus Juris Secundum, Municipal Corporations, Sec. 2068, it is said:". . . A state has power to authorize the refund of municipal taxes paid, and a statute providing for refunds has been held valid, even though it imposes duties retroactively on municipalities, and does not limit the time in which suit may be instituted for the refund. The legislature may enact a statute making a refunding of illegal or excessive taxes obligatory on the city, and such a provision may be construed as mandatory, even though permissive in form, and as establishing the city's obligation to refund regardless of whether or not the payment of the tax was voluntary."

In *In re Monfort's Estate,* 193 Minn. 594, 259 N. W. 554, 555, 98 A. L. R. 280, it was said: "There is no unconstitutional appropriation to any individual or for any private purpose when the Legislature recognizes a just demand, as for money had and received, against the state and appropriates money wherewith to discharge the debt and directs its payment out of the money so appropriated. There is nothing in the Constitution forbidding the state to recognize and pay its just debts." See also *U. S.* v. *Realty Co.,* 163 U. S. 427, 16 S. Ct. 1120, 41 L. Ed. 215; *Allen* v. *Smith,* 173 U. S. 389, 19 S. Ct. 446, 43 L. Ed. 741; *Pope* v. *U. S.,* 323 U. S. 1, 65 S. Ct. 16, 89 L. Ed. 3.

In *In re Heinemann's Will,* 201 Wis. 484, 230 N. W. 698, 700, it was said: "A recognition of all such obligations might be so burdensome to the state as to prevent it from

recognizing any. This would prevent the state from being as honest as it could afford, notwithstanding its desire to make restitution so far as possible. . . . the state may at its pleasure recognize such of its moral obligations as it feels able to discharge . . . the suggestion that it must recognize either all or none finds no support in any constitutional provision, and tends to hinder rather than promote ethical conduct on the part of the state.''

It results that we find the assignments of error without merit and the decree of the Chancellor will be affirmed.

All concur.