**EDDINS–WALCHER BUTANE COMPANY, Appellant,**

v.

**R. S. CALVERT, Comptroller of Public Accounts of Texas et al., Appellees.**

**No. 10416.**

Court of Civil Appeals of Texas.

Austin.

June 27, 1956.

Rehearing Denied Aug. 8, 1956.

Preston A. Weatherred, Dallas, for appellant.

John Ben Shepperd, Atty. Gen., W. V. Geppert, L. P. Lollar, Asst. Attys. Gen., for appellees.

GRAY, Justice.

Appellant has appealed from a judgment, rendered at a nonjury trial, denying it relief in its suit to recover taxes paid under protest. Art. 7057, Vernon's Ann.Civ.St.

Appellant is a Texas Corporation with its home office in the City of Midland and is engaged in the business of buying and selling liquefied petroleum products. It maintains branch offices one of which is located in the City of Rankin in Upton County an incorporated city with more than 1000 and less than 2500 inhabitants according to the last preceding Federal Census, 1950. It buys liquefied petroleum products consisting essentially of butane from refineries in New Mexico and Texas. The butane is transferred from the facilities of the refineries to appellant's trailer tanks and then transported to appellant's storage tanks.

Appellant maintains within the corporate limits of the City of Rankin two storage

tanks, two delivery trucks and an administrative office. The butane is sold to various customers (more than one) within the city, is distributed by transferring the butane from one of the two storage tanks to one of the two trucks and finally it is transferred to the facilities of the consumer who is the purchaser.

The butane is measured by the gallon at the refineries and to the customer consumer.

The tax in question was levied under Art. 7060 as amended, Vernon's Ann.Civ.St. As applicable here this statute provides:

"Each individual, company, corporation, or association owning, operating, managing, or controlling any gas, electric light, electric power, or water works, or water and light plant, located within any incorporated town or city in this State, and used for local sale and distribution in said town or city, and charging for such gas, electric lights, electric power, or water, shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller under oath of the individual, or of the president, treasurer, or superintendent of such company, or corporation, or association, showing the gross amount received from such business done in each such incorporated city or town within this State in the payment of charges for such gas, electric lights, electric power, or water for the quarter next preceding. Said individual, company, corporation, or association, at the time of making said report for any such incorporated town or city of more than one thousand (1,000) inhabitants and less than two thousand, five hundred (2,500) inhabitants, according to the last Federal Census next preceding the filing of said report, shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date equal to .484% of said gross receipts, as shown by said report; * * *."

Appellant here presents six points. These are to the effect that the trial court erred in holding that: (1) the storage and distribution facilities of appellant located in Rankin constitute a "gas works" or "gas plant" within the meaning of Art. 7060 supra; (2) butane constitutes a gas within the meaning of Art. 7060; (3) appellant is subject to the tax imposed by Art. 7060 because the statute as applied to appellant violates the State and Federal Constitutions; (4) appellant is liable for the tax imposed by Art. 7060 because the statute is unconstitutionally discriminatory because it taxes only businesses located within any incorporated town or city; (5) appellant is liable for the tax because Art. 7060 is unconstitutionally discriminatory because it grants substantive exemptions to businesses in the nature of public utilities only, and (6) appellant is subject to the tax because the statute applies only to public utilities.

Art. 7060 supra provides: "Each * * * corporation * * * owning, operating * * * any gas * * * works * * * or plant located within any incorporated town or city * * * and used for local sale and distribution in said town or city, and charging for such gas * * * shall * * *." Certainly the facilities of appellant are located within the corporate limits of Rankin, they are used for local sale and distribution of butane in the city, they are sufficient for that purpose and charges are made for appellant's product.

■ In Utilities Natural Gas Co. v. State, Tex.Civ.App., 118 S.W.2d 927, 929, the Court said:

"* * * the term 'gas plant' as used in the statute includes any method or manner whereby the business of selling and distributing gas is carried on within any incorporated city or town. Dallas Gas Co. v. State, Tex. Civ.App., 261 S.W. 1063, error ref.

"In 3 Bouv. Law Dict., Rawle's Third Revision, p. 2597, the word or

term 'plant' is defined as being 'the furnitures and tools necessary to carry on any trade or mechanical business.' A highly complex or elaborate system is not necessary, but the most simple system whereby the business of selling and distributing gas to local trade within any incorporated city or town will suffice under the taxing statute as a gas plant."

The above case was reversed. Utilities Natural Gas Co. v. State, 133 Tex. 313, 128 S.W.2d 1153. The Court there stated the facts and as material here they are:

" 'The defendant does not sell or distribute gas to the public generally. The defendant's principal customer and the source of substantially all of its revenue is the Central Power & Light Company. Defendant sells gas to such Company under a long term written contract.

" '4. The premises and plant of said Central Power & Light Company are adjoining and adjacent to the city limits of the town of Victoria, Texas, but are within said city limits. The point of delivery and sale for gas sold by defendant to said Central Power & Light Company, as fixed by said written contract, is on the premises of said Power Company. Defendant owns a pipe line extending from a point outside of the city limits of Victoria, Texas, to said point of delivery, such pipe line, however, enters the city limits directly on the premises of the Central Power & Light Company and does not cross any street, alley, or other public place within said City. Defendant has no franchise entitling or permitting it to cross, use or occupy any of the streets, alleys, or other public places in the City of Victoria, Texas, nor does the defendant have, claim or use any easement rights permitting it to cross, use or occupy any private lands within such city rather than the said premises of the Central

Power & Light Company. Defendant's pipe line or appurtenances have never so crossed, used or occupied any of such alleys, streets, or other public places, or any other private lands within the City of Victoria, Texas."

In its opinion the Court said:

"* * * considered in the light of the provisions of the statute, as a whole, we have no doubt that the simple fact that a delivery of gas is made in the city, by means of said pipe line, to a single customer, and to nobody else, was not intended by the legislature to be comprehended by the term 'distribution' as used. This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city. It means the transfer of possession of gas to various individuals or concerns in the city. Any other construction of the term would, in our opinion, involve a departure from the legislative intent. Since, therefore, the use of 'gas-works,' in a city or town in this State, for the distribution of gas in said city or town is, by the statute, made an essential characteristic of the business taxed, it follows that the business in which the plaintiff in error is engaged, as disclosed by the undisputed facts, is not subject to the tax which this statute provides."

We think the Supreme Court did not disagree with the Court of Civil Appeals as to what constituted a "gas plant" within the meaning of the statute, Art. 7060, but did disagree with its conclusion that the facts were sufficient to show that the Gas Company was operating a gas plant within the corporate limits of Victoria.

Appellant refers to butane as a "liquefied petroleum product," a "liquid" product and says the product is not a gas. The Supreme Court of Tennessee in Tennessee

Gas Co. v. McCanless, 184 Tenn. 387, 199 S.W.2d 108, 109, defined butane as follows:

"Butane, the substance here involved, is a gas emanating from oil wells in the form in which it is ultimately used. It is sufficiently accurate for the purpose of this opinion, to say that oil well products are chemically divided into three classes: (1) The natural gases, one of which is butane; (2) the liquids, among which are gasoline and oil; and (3) the solids, such as paraffin. It is possible, by compression and reduction in temperature, to change the form of the gases from gases to liquids. But since when the abnormal compression is removed and the temperature returned to normal, the gases resume their original and natural state without other processing, the chemical classification of the gases remains unchanged whether the gases be in their original and permanent form or whether they be temporarily liquefied."

Appellant introduced in evidence a statement by Dr. Jeskey, Associate Professor of Chemistry, Southern Methodist University, wherein he said:

"Liquefied petroleum gas is the term used for products which consist essentially of any or a mixture of the following hydrocarbons:

Propane   formula,   $CH_3CH_2CH_3$
Butane   formula,   $CH_3CH_2CH_2CH_3$
Isobutane   formula,   $(CH_3)_2CHCH_3$

Although these hydrocarbons are gases when they are captured from the ground, it is necessary to liquefy them under pressure at the refinery for ease in handling.

"The propane and butane products, which is the subject of your inquiry, are quite readily liquefied. In fact, from the time these products are bought f. o. b. from the refinery by the dealer until delivery to the ultimate consumer, they are handled, stored, and distributed under pressure as a liquid. Propane and butane are pumped like any other liquid when transferred to tank trucks, dealers' storage tanks, and customers' storage facilities. In addition these products are sold by the gallon which is a standard term for the measurement of liquids. The consumer uses the product as a gas; the liquid is vaporized to a gas which is conducted through pipes to the appliance where burned."

Appellant stresses the fact that butane is measured by the gallon. However this method of measurement is due to the fact that the butane is changed to the artificial state of a liquid by pressure. It does not exist as a liquid when captured and it returns to its natural state of a gas when the pressure is released.

Appellant says that in 1907 when Art. 7060 supra was first enacted by the Legislature butane had not been discovered and that it did not come into commercial use until several years later. It is to be noticed that the statute formerly used and now uses the term "any gas" and does not limit its provisions to any specific kind of gas. Moreover since 1907 the statute has been four times amended,—1930, 1936, 1941 and 1951. Also the Legislature has enacted statutes dealing with liquefied petroleum gas. Arts. 6053 and 6053a, Vernon's Ann. Civ.St. It has placed the same under the control of the Railroad Commission and in 1951, Art. 6052a, a division of the Railroad Commission known as the Liquefied Petroleum Gas Division, was created. Sec. 2 of Art. 6053, deals with the handling, storing, selling or distribution of natural and liquefied gases "including butane and other odorless gases."

The above statutes demonstrate that the Legislature has not only considered and treated butane as a gas but has so classified it.

■ We hold that butane is a gas and that appellant's facilities in Rankin constitute a gas plant or gas works for the sale and distribution of gas within the meaning of Art. 7060, supra.

■■ The Legislature may classify persons and corporations according to their businesses and may apply different rules to those in different classes and in so doing it does not violate the State and Federal Constitutions. Supreme Lodge United Benevolent Ass'n v. Johnson, 98 Tex. 1, 81 S.W. 18. Reed v. City of Waco, Tex.Civ.App., 223 S.W.2d 247. Er. ref. Art. 7060 supra operates uniformly upon all persons and corporations operating a gas plant or gas works located within any incorporated town or city, used for the local sale and distribution of gas and charging therefor. And because the record does not suggest that the classification is unreasonable it cannot be said that the statute violates the State or Federal Constitutions. Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31(36). Classification is a legislative function and no doubt it had a reason for making the classification it did make. We might assign some reason that appears apparent to us why the Legislature separated persons and corporations operating their plants or works within an incorporated town or city from those so operating outside of an incorporated town or city. However this is not necessary, even if we could ferret out the reason, because it does not appear that the classification was purely arbitrary and for that reason it should not be set aside. 9 Tex.Jur., Secs. 120 and 121, pp. 558 and 559.

■ In 1930, 41st Leg., 5th C.S., p. 168, the Legislature changed the wording of Art. 7060. Prior to that time the statute applied to persons etc. operating "within this State" and by that Act it was made to apply to persons etc. operating works or plants "located within any incorporated town or city" and fixing the population thereof. However the tax imposed by the statute on those within the named classes is uniform. Suffice it to say that if facts can be reasonably supposed to exist which would support the classification made by the Legislature then those facts must be presumed. State v. Southwestern Gas & Electric Co., 145 Tex. 24, 193 S.W.2d 675, 678, 9 Tex.Jur., Sec. 121, p. 559.

■ A reading of Art. 7060, supra, in its entirety fails to reveal that it is subject to the complaints made by appellant's points (5) and (6). In State v. Southwestern Gas & Electric Co., supra, the Court said:

"The legislature of the state has frequently placed public utilities within a class by themselves for the purpose of taxation. This is the effect of Vernon's Annotated Civil Statutes, Article 7060, of which the quoted proviso is a part. The legislative action in so doing has been upheld in previous enactments. Dallas Gas Co. v. State, Tex.Civ.App., 261 S.W. 1063, writ refused, and authorities therein cited."

Appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.