E. L. Bruce Co. *v.* Evans, Commissioner of Finance and Taxation.

(*Nashville*, December Term, 1949.)

Opinion filed March 17, 1950.

CANADA, RUSSELL & TURNER, of Memphis, for appellant.

ROY H. BEELER, Attorney General, WILLIAM F. BARRY, Solicitor General, and HARRY PHILLIPS, Assistant Attorney General, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant filed its original bill in the Chancery court to recover certain franchise taxes which it had paid under protest. The amount actually in controversy is of secondary consideration, the same being only $205.04. But the ruling of the State Department of Finance and Taxation, and the method adopted in determining the amount of the tax in each case, is very important and is the only question at issue. The Statute providing for the tax (Chapter 100, Public Acts of 1937) reads as follows: "The privilege tax hereby imposed shall be a tax of fifteen (15c) cents on the One Hundred ($100.00) Dollars, or major fraction thereof, of the issued and outstanding stock, surplus and undivided profits of each such corporation as shown by the books and records of such corporation at the close of its last calendar or fiscal year preceding the making of the sworn report hereinafter required."

All corporations are required by Code Section 1248.146 to file annually with the Commissioner of Finance and Taxation a statement showing:

"(b) The amount of capital stock subscribed and paid in, the amount issued and outstanding, the amount of surplus and undivided profits, together with the book value of each share of such stock as shown by the books

and records of the corporation at the close of its last calendar or fiscal year.

"(c) A comparative balance sheet as of the beginning and close of the last calendar or fiscal year as shown by the books and records of the corporation."

The theory of the complainant is that it carries upon its books a reserve for bad debts and that it is entitled to exclude its "reserve for bad debts" from surplus in calculating its franchise tax. On the contrary the Commissioner of Finance and Taxation insists "that a bad debt should be excluded from *surplus* only when it has become actually *bad* and uncollectable". The Chancellor dismissed the complainant's suit, holding that "a reserve set upon the books of the corporation does not represent a liability accrued and cannot be used in reduction of its surplus". In other words the Chancellor held that the defendant's method of computing the tax was correct.

An appeal was prayed and granted to this Court. The assignments of error collectively raise but one question, that is, whether or not the complainant corporation may set up on its books a "reserve" for debts which are actually bad and also to cover debts which may become uncollectable, and take a deduction therefor.

The record before us sustains the Commissioner's contention that: "under the construction of the franchise tax law adopted by the Department of Finance and Taxation appellant and all other corporations similarly situated are permitted to deduct bad debts from surplus when they actually become bad and uncollectable", and "has been so allowed by the Federal Bureau of Internal Revenue". The ruling of the Department is the same

in all cases and there is no discrimination in favor of one and against the other.

▉ Able counsel for the complainant presents no reasonable argument in support of any assignment of error that the Commissioner's method of computing the franchise tax is not in conformity with the provisions of the statute, nor is there any showing that there has been any discrimination against the complainant. No reason is given, and we can think of none, whereby the taxpayer should be accorded the privilege of determining the amount of his tax by setting aside "reserves" which do not represent their actual accrued liability. If reserves are set aside for contingencies which may never arise, or for obligations which are admittedly of a doubtful character, the whole purpose and intent of the law is thereby completely nullified. All such reserves must be considered as "surplus" within the meaning of the franchise tax statute.

We are in agreement with the Chancellor that "if the complainant's theory were accepted it would render the franchise tax law very difficult to enforce and easy to evade", citing *Bergeda* v. *State*, 179 Tenn. 460, 167 S. W. (2d) 338, 144 A. L. R. 696. This is true because the Commissioner would be onerated with the insuperable task of going behind the books of every corporation in the State to determine if the reserves set up on its books are for debts which were actually bad, or of a doubtful character. A fair investigation might disclose the fact that these so-called "bad" debts were not bad at all but collectable.

▉ It will serve no purpose for us to respond to complainant's contention as to the basis upon which it makes a return for income tax payments and that which is re-

quired by our franchise tax statute, since both complainant and the Commissioner of Finance and Taxation are bound by the State statute. Suffice it to say that the Commissioner allows every corporation to deduct from its "surplus" every "bad debt" which the Federal Bureau of Internal Revenue has approved as bad and uncollectable. Under the complainant's theory if its claimed right to deduct other debts which, in its opinion, are uncollectable from surplus in fixing the amount of its franchise tax, the result would be to compel the State to litigate the solvency of every debtor whose debt is claimed to be uncollectable. For us to give the statute such a construction would, as we have heretofore stated, frustrate the legislative intent rather than conform to it.

The Chancellor's decree is affirmed.

All concur.