The KROGER COMPANY, also known as The Kroger Co., Appellant,

v.

DEPARTMENT OF REVENUE, Commonwealth of Kentucky; John McD. Ross (former), Robert H. Allphin (present), Commissioner of Revenue; Commonwealth of Kentucky; and Kentucky Board of Tax Appeals, John S. Hoffman (former chairman), William R. Gentry, Jr. (present chairman), Appellees.

Court of Appeals of Kentucky.

Feb. 13, 1981.

Discretionary Review Denied
May 19, 1981.

Brooks Alexander, Carl Arthur Henlein, Middleton & Reutlinger, Louisville, for appellant.

William P. Sturm, Chief Counsel, Legal Division, Dept. of Revenue, Frankfort, for appellees Department of Revenue, Ross and Allphin.

Steven L. Beshear, Atty. Gen., Frankfort, for appellee Commonwealth of Kentucky.

Before GANT, VANCE and WILHOIT, JJ.

WILHOIT, Judge.

This is an appeal by the Kroger Company from a judgment of the Franklin Circuit Court which reversed an order of the Kentucky Board of Tax Appeals ruling that money held by Kroger in an account enti-

tled "Deferred Federal Income Taxes" was not "capital" as that term was defined in the applicable version of KRS 136.070(2) and therefore was not includible in determining the corporation license tax to be paid by Kroger for the years 1968 through 1973.

The circuit court held that while the account for deferred income taxes in one sense represented an accounting entry or reconciliation, "in a larger sense this account represented millions of dollars of 'additional capital used and employed in [Kroger's] business,'" thus bringing it within the statutory definition of capital.

In filing its federal income tax returns, Kroger used a different method of computing the depreciation on its depreciable property from that used by it in its financial statements. For income tax purposes it employed an accelerated method, while for purposes of its financial statements it employed a straight-line method. The accelerated method of depreciation permits a much greater deduction of depreciation for income tax purposes in the early portion of the depreciable life of property than the straight-line method. As a result, the actual federal income tax liability for the years in question was somewhat lower than that shown on Kroger's financial statements. To reconcile this difference the statements carried an account denominated "Deferred Federal Income Taxes" in which was listed the amount of the difference between what the income taxes were and what was estimated they would have been had the straight-line method of depreciation been used for payment of income taxes.[1] Of course, when an accelerated method of depreciation is used less depreciation is allowable for income tax purposes on the property during its later depreciable life than earlier, while with the straight-line method of the allowable depreciation remains constant throughout the property's depreciable life. As allowable depreciation decreases,

everything else remaining constant, it follows that tax liability will increase. The taxes avoided in earlier years through use of accelerated depreciation cannot be avoided in later years, and in this sense federal income tax has only been deferred.

Kroger's vice-president testified that the money annually listed in the deferred income tax account was not actually placed in a reserve account to be held only for the purpose of paying income taxes, but that it was commingled with general funds of the corporation and was available for use "for current items" although no capital expenditures were made from this money.

KRS 136.070 levies an annual license tax of "seventy cents (70¢) on each one thousand dollars ($1,000.00) of the capital employed in the business" of corporations such as Kroger. The tax is computed by a mathematical formula set out in the statute which requires the multiplication of the "capital" of the corporation by a statutory fraction. Kroger contended below and contends here that the amounts carried in its deferred tax account should not be includible in arriving at its "capital" for computing the license tax. Section (2) of the statute, as it read during the period in controversy, contained this definition:

> The term 'capital' as used in this section includes, but is not limited to, capital stock, surplus, moneys borrowed for purposes other than current operating expenses and used in lieu of or in addition to invested capital and earned surplus, advances by affiliated companies, intercompany accounts, or any other items representing additional capital used and employed in the business.

Although there was apparently no statute or regulation requiring such a procedure except for capital stock, Kroger states, and the Department of Revenue does not contradict, that the Department required corporations to use the values reflected on the

1. *The deferred federal income tax account carried the following amounts for the years indicated:*

|  |  |
|---|---|
| 1968 | $ 12,394,745.00 |
| 1969 | 13,509,315.00 |
| 1970 | 15,913,647.00 |
| 1971 | 18,720,452.00 |
| 1972 | 21,929,813.00 |
| 1973 | 25,524,449.00 |

corporations' financial statement for computation of the value of all assets for license taxes.[2] Kroger maintains that the amount shown each year on its financial balance sheet or statement as deferred income tax is nothing more than an accounting reconciliation which would disappear if it were permitted to use on its license tax return the same accelerated depreciation used on its income tax return and that since this money represents only an accounting reconciliation it does not fall within the statutory definition of "capital."

Aside from capital stock, the statute did not provide the method by which the Department of Revenue should arrive at the value of a corporation's capital for computation of the license tax. Thus it would appear that any method which is fair and equitable could be used. *Cf. Borders v. Cain*, Ky., 252 S.W.2d 903 (1952). Absent some peculiar circumstance in a given case, it does not strike us that as a general proposition determination of the value of capital by means of a corporation's financial statement is either unfair or inequitable.

It appears from the briefs and argument of counsel that under generally accepted accounting principles the money carried as deferred taxes would not be considered capital for accounting purposes. *Cf. Peake v. Thomas*, 222 Ky. 405, 300 S.W. 885 (1927). Nevertheless, our concern must be with what the statute requires, not with what accounting practices require, no matter how correct those practices may be as a matter of accounting principles, *Malco, Inc. v. Commonwealth, Department of Revenue*, Ky.App., 568 S.W.2d 755 (1978); *National-Standard Co. v. Department of Treasury*, 384 Mich. 184, 180 N.W.2d 764 (1970); *Broadwell Realty Corp. v. Coble*, 291 N.C. 606, 231 S.E.2d 656 (1977), unless, of course, the statute manifests some intent that the determination of what is capital shall be made in accordance with accepted accounting principles. *See, e. g., American Can Co. v. Director of the Division of Taxation*, 87 N.J.Super. 1, 207 A.2d 699 (1965). As observed by the Michigan Supreme Court in *National-Standard Co., supra* at 769, delegation of the power to private accountants to determine capital in lieu of a legislative standard set forth in the statute "would be clearly unconstitutional."

Under our statute, the Legislature has included in its standard of what is "capital" the term "surplus." That term is not defined in this statute although we note that the Kentucky Business Corporation Act defines "surplus" to be "the excess of the net assets of a corporation over its stated capital." KRS 271A.010(11). This is much the same definition given by the Court to the term "surplus" when used by a corporation in a stock subscription paper in *Southern Insurance Co. v. Milligan*, 154 Ky. 216, 157 S.W. 37 (1913). The Missouri Supreme Court has stated that "[o]rdinarily, 'surplus' means the residue of assets after liabilities, including capital, have been deducted." *American Life & Accident Insurance Co. v. Love*, 431 S.W.2d 177, 180 (Mo. 1968). *Webster's Third New International Dictionary* 2301 (1971) gives as a definition of surplus, "an excess of the net worth of a corporation over the par or stated value of its capital stock[.]" All of this leads us to conclude that, with reference to corporations, the common and approved meaning of the word "surplus" is the excess of the net assets of a corporation over the par or stated value of its corporate stock. We find nothing in KRS 136.070 to indicate that the term is used there in any other sense. *See* KRS 446.080(4).

Applying this meaning of surplus to the amounts carried by Kroger in its deferred tax account, it appears that those amounts from year to year represent surplus and therefore fall within the statutory, if not accounting, definition of capital. They represent unencumbered money available to the corporation for such corporate purposes as it may choose. It is true that in

---

**2.** The present KRS 136.070(2) requires computation based on "value reflected on financial statements for book purposes[.]"

future years the corporation's liability for income taxes may increase because of its election to employ an accelerated method of depreciation in past years. But this is nothing more than a contingent, rather than a certain, liability, and the amount of increase will be as projected by the corporation only in the event that its annual income and expenses remain constant, not to mention the tax rates.

■ It should be emphasized that here we are dealing with a state license tax and the measurement of the value of capital employed in the taxpayer's business in a given year. That measurement must be based on the taxpayer's operations in that year, not on what the taxpayer projects might be its operations in a future year or years. KRS 136.100. The method of depreciation used by the taxpayer in computing its federal income tax does not control the method by which depreciation expenses are to be computed for state license tax purposes. Depreciation expense does not represent an actual expenditure of money by the taxpayer but is a deduction against income to allow for the exhaustion and wear and tear of certain assets. *See* I.R.C. § 167. To the extent that Kentucky allows a depreciation expense to be deducted in the computation of the value of capital, we cannot see why it would be under an obligation to permit the taxpayer to employ the same method of depreciation he chose for his federal income tax return, so long as he is permitted to compute depreciation by a method which is fair and equitable. *Borders v. Cain, supra.* There has been no showing that the method of computing depreciation required in this case reached an unfair or inequitable result.

■ There is nothing inconsistent or unconstitutional in the Department of Revenue's requirement that Kroger use a straight-line method for calculating the value of its capital while allowing Kroger to deduct as an expense only the amount of federal tax it paid through using an accelerated method of depreciation. It is the income tax actually paid by Kroger in a given year which accurately reflects its operations

for that year, and again if the straight-line method of computing depreciation expense fairly and equitably measures that expense, the taxpayer has no legitimate complaint. Kroger is not, as it argues, being "whipsawed" because the Department requires it to use straight-line depreciation to calculate depreciation expense and accelerated depreciation to calculate income tax expense. It is being required to reflect the income tax that it actually paid in a given year and to claim depreciation expense under a method which reasonably reflects the true value of capital.

Kroger also argues that it is treated discriminatorily from a corporation which uses accelerated depreciation on its federal income tax return and is in turn permitted to value its depreciable assets by this same method on its Kentucky license tax return. In the first place, there is no evidence in the record to indicate that any such practice is in fact permitted, although both the taxpayer and the Department made hypothetical calculations before the Board of Tax Appeals of the differing results which would be reached should accelerated depreciation be used for calculation of both taxes. In the second place, should such a practice be permitted, it could well be that because of the nature and use of the assets of a particular corporation, the value of its capital might be more fairly measured from year to year by means of allowing depreciation expense based on accelerated depreciation. To conclude on the basis of the record before us that Kroger has been treated in an unreasonably discriminatory manner would require us to indulge in a great deal of impermissible speculation.

Because of the result which we have reached, it is unnecessary to consider whether the amounts retained by Kroger as deferred income taxes falls within "additional capital used and employed in the business." We thus forgo consideration of the tautological mysteries posed by that provision of the statute.

The judgment of the circuit court is affirmed.

All concur.