REVENUE CABINET, n/k/a Department of Revenue, Commonwealth of Kentucky, Appellant,

v.

The BABCOCK AND WILCOX COMPANY; Kentucky Board of Tax Appeals, Appellees.

The Babcock & Wilcox Company, Cross–Appellant,

v.

Revenue Cabinet, n/k/a Department of Revenue, Commonwealth of Kentucky; Kentucky Board of Tax Appeals, Cross–Appellees.

Nos. 2004–CA–001692–MR, 2004–CA–001772–MR.

Court of Appeals of Kentucky.

Dec. 9, 2005.

Discretionary Review Denied by Supreme Court Oct. 12, 2006.

Laura M. Ferguson, Frankfort, KY, for appellant/cross-appellee.

Bruce F. Clark, Erica L. Horn, Frankfort, KY, for appellee/cross-appellant.

Before COMBS, Chief Judge; McANULTY, Judge; PAISLEY, Senior Judge.[1]

## OPINION

PAISLEY, Senior Judge.

This is an appeal by the Revenue Cabinet, now known as the Department of Revenue ("Revenue"), from an opinion and order of the Franklin Circuit Court ruling that it did not have enough information to determine whether all or part of a "Reserve for Product Liability" account held by the Babcock and Wilcox Company (B & W) is "surplus" and therefore taxable "capital" pursuant to Kentucky Revised Statutes (KRS) 136.070. Revenue contends that B & W failed to preserve for review the issue of whether the account is capital, and that even if it had, the entire account constitutes taxable surplus. B & W has cross-appealed, arguing that the court did have sufficient evidence to determine that the account is surplus to the extent that its balance exceeds that of a corresponding insurance recovery account.

B & W is a Delaware corporation operating in Kentucky. It manufactures and installs industrial boilers. B & W used asbestos as an insulation material for its boilers until the early 1970s, when government regulations began to limit the use of asbestos because it was found to be a health hazard.

B & W began to be named as a defendant in asbestos lawsuits in the late 1970s. In 1982, the company began to settle claims for asbestos exposure. In 1990, the company reached an agreement with its insurers which provided for the reimbursement of its past, pending and future costs associated with asbestos claims pursuant to the terms and conditions of the insurance policies. As of December 31, 1999, B & W had settled over 340,000 asbestos claims, with approximately 45,000 claims outstanding and presented for settlement. The settlement costs have been borne in part by B & W and in part by its insurers.

This case concerns the character, for purposes of the Kentucky corporate license tax, of an account maintained by B & W, called the "Reserve for Product Liability" ("the Reserve Account"). The Reserve Account reflects B & W's potential

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

liability for asbestos litigation arising in the future. It is based on actuarial estimates.

B & W also maintains another, separate account, the Insurance Recovery Account. The Insurance Recovery Account reflects the payments that will be made to B & W by its insurers, pursuant to the 1990 agreement, for products liability claims in the event such claims become due and owing.

The net difference between the accounts would be the amount B & W shareholders could expect to lose in the future as a result of asbestos litigation, i.e., the amount of damages and other costs that would not be covered by insurance. For the period in question here, 1995–1997, this amount averaged $122,500,000.

Under the terms of KRS 136.070, corporations operating in Kentucky are required to pay an annual license tax of $2.10 on each one thousand dollars of capital employed in the business. *See* KRS 136.070(1). KRS 136.070(2)(a) provides the following definition of "capital":

> The term "capital" as used in this section means capital stock, surplus, advances by affiliated companies, intercompany accounts, borrowed moneys or any other accounts representing additional capital used and employed in the business. Accounts properly defined as "capital" in this section shall be reported at the value reflected on financial statements prepared for book purposes as of the last day of the calendar or fiscal year[.]

Before 1994, B & W treated the aforementioned two accounts in the following manner for purposes of the Kentucky corporation license tax: it offset the Insurance Recovery Account against the Reserve Account and listed the net amount of the Reserve as a "non-current liability" on its financial statements.

However, when B & W filed its license tax returns for the tax years 1995–1997, it reported the entire Reserve Account as a "non-current liability." The Insurance Recovery Account was listed separately as a "non-current asset" on its financial statements.

Revenue issued a corporation license assessment for B & W that included the entire amount of the Reserve Account in its calculation of capital and did not include an adjustment offsetting the Reserve Account with the Insurance Recovery Account.

B & W filed a Protest Letter, dated July 10, 1998. The language of the letter (and of B & W's subsequent filings to the Kentucky Board of Tax Appeals) is significant for purposes of this appeal because Revenue contends that B & W failed to preserve for review the issue of whether the Reserve Account is capital, and preserved only the issue of whether it may be offset by the Insurance Recovery Account. B & W's Protest letter stated in pertinent part as follows:

> [T]he taxpayer respectfully protests the Revenue Cabinet's findings on the basis that **the Cabinet has failed to include all the accounts necessary to correctly reflect the taxpayer's capital subject to apportionment.**
>
> . . . .
>
> The Cabinet has included in capital an amount listed in Other Liabilities under the heading Reserve for Product Liability. This account represents the exposure associated with asbestos claims. Beginning in the fiscal year ended 03/31/95, the taxpayer began reporting this amount separate from its contra account, Insurance Recovery. Prior to this time a "net number" was presented in the liability section. It is the taxpayer's contention that, just as with receiv-

able [sic] and payables, **these accounts must be netted to arrive at the correct amount to be included in capital.**

(Emphasis supplied.)

Revenue maintained that the entire Reserve Account was capital and refused to allow it to be offset by the Insurance Recovery Account. B & W sent a second letter that stated:

> The accounts you disallowed are indivisibly conjoined with their corresponding liability account. **If the Cabinet fails to net these accounts, it will be taxing the same capital twice.** For example, in the case of product liability, there is an asset for insurance claims that the company will ultimately receive from its insurer and a liability for amounts expected to be paid to claimants by the company. By adding back the gross liability, you are, in effect, saying that the company's value is increased by the expected insurance proceeds while ignoring the specific claims to be paid by the company from those proceeds.

(Emphasis supplied.)

Revenue's final letter of October 23, 2001, concluded that

> [t]he statutory definition of "capital" includes those liability and equity accounts specifically mentioned as well as other accounts representing additional "capital" used and employed in the business. It is the position of the Cabinet that the term "capital" as defined by KRS 136.070(2)(a) does not include asset accounts listed by the taxpayer as proposed adjustments to capital employed.

B & W filed a Petition of Appeal to the Kentucky Board of Tax Appeals (KBTA) stating in pertinent part:

> The Revenue Cabinet's Final Ruling is erroneous and contrary to KRS 136.070 in that it includes as "capital employed" values which are in excess of the true capital employed by Babcock & Wilcox in Kentucky, and fails to consider the related asset accounts in violation of Kentucky law.

In its order (No. K–18991), the KBTA delineated B & W's position in the following manner:

> In the Protest, Babcock conceded the Liability Accounts [this includes the Reserve Account] were properly included in capital pursuant to its letter of July 10, 1998, but sought to have the assessments vacated on the grounds that the Cabinet's inclusion of the liability accounts without offsetting against them the balances of the asset accounts was erroneous.

The KBTA then proceeded to state that under *Kroger Co. v. Department of Revenue,* 614 S.W.2d 705, 708 (Ky.App.1981), "Liability Accounts are properly included in capital as surplus." The KBTA further held that "[o]ffsetting the Asset Accounts against the Liability Accounts effectively exempts or excludes a portion of the Liability Account from capital." The KBTA concluded that this was impermissible because

> [e]xemptions are disfavored by law and are to be narrowly construed, with any and all doubts resolved against the exemption's application. The Kentucky license tax statute does not authorize the offsetting of Asset Accounts against Liability Accounts.

B & W's complaint on appeal of this decision to the Franklin Circuit Court directly addressed the KBTA's finding that B & W had conceded that the Reserve Account was capital:

> 14. The Reserve for Product Liability Account, except to the extent that it represents a reduction in retained earnings, does not constitute taxable capital under KRS 136.070.

. . . .

21. In the proceeding before the Board, the Revenue Cabinet maintained that Babcock had conceded that the liability accounts were properly included in capital because of the language of the Protest filed July 10, 1998.

22. The Board erred in relying on the language of that Protest letter because the issues presented to the Board included: first, **whether the liability account should be included as capital at all; and second, whether, if so, the liability account should be properly reduced by the corresponding asset account** (Product Liability Reserve).

(Emphasis supplied.)

Then, in its reply brief to the Circuit Court, B & W appeared to maintain its earlier position that it was requesting an offset, not a complete exclusion of the Reserve Account from capital:

Babcock now requests that the Court decide only one issue: *Whether Babcock's "Reserve for Product Liability" must be offset by its "Insurance Recovery" account when calculating "capital employed" pursuant to KRS 136.070?* Babcock submits that the accounts must be offset to obtain "capital employed in the business" subject to tax.

(Emphasis in original.)

In its opinion and order, the circuit court delineated the central issue as "whether the KBTA correctly found that Kentucky law does not authorize the offsetting of Babcock's [B & W's] 'Reserve for Product Liability' account against the 'Insurance Recovery' account in the calculation of taxable capital."

Revenue had raised before the circuit court the issue of whether B & W had properly preserved for review the issue of whether the Reserve Account was capital, arguing that B & W's protest letter and other filings had conceded that the Reserve Account was capital.

The circuit court held, however, that B & W had placed a condition on this concession that had preserved for review the more fundamental question of the nature of the entire account. The court explained that

[t]he main reason B & W maintains that the offset is necessary is because there are non-capital funds in the "Reserve for Product Liability" account. . . . If B & W believes that there are non-capital funds in the account, it could not have logically conceded that the account is "capital." The Court consequently reads B & W's concession to mean this: the "Reserve for Product Liability" account is "capital," provided that the account is offset by the "Insurance Recovery" account."

The court then observed that the KBTA and Revenue had based their contention that the Reserve Account is "surplus" and therefore "capital" on the interpretation of that term found in *Kroger*, 614 S.W.2d 705. In *Kroger*, this Court held that a deferred tax account was a contingent liability that constituted surplus subject to the corporation license tax.

But, in the circuit court's view, Revenue and the KBTA had failed to provide specific evidence that the B & W Reserve Account met the definition of "surplus" given in that opinion. For instance, the *Kroger* court did not hold that all contingent liability accounts are surplus, but only those representing "unencumbered money available to the corporation for such corporate purposes as it may choose." *Id.* at 708. In the court's view, it was unclear from the record whether the Reserve Account met this definition. The court concluded as follows:

Since the Court cannot determine if the "Reserve for Product Liability" account is "surplus," the Court cannot decide if

the account should be included in the calculation of "capital" under KRS 136.070. Because the Court cannot make this decision, the Court cannot answer whether the Cabinet is authorized to off set the "Reserve for Product Liability" account against the "Insurance Recovery" account. The reason for this conclusion is as follows. If the "Reserve for Product Liability" account is "capital," then it cannot be offset because KRS 136.070 requires the taxation of "capital." The offset would subtract "capital" funds from the account and consequently prevent the Cabinet from taxing those funds. In contrast, if the account is not "capital," or if part of the account is not "capital," then the offset may be permitted to subtract the non-capital funds from the account. This subtraction may be necessary to ensure that only "capital" in the account is taxed. Hence, the Court first needs to know if or how much of the "Reserve for Product Liability" account is "capital."

The circuit court remanded the case to the KBTA for additional findings of fact and conclusions of law regarding "whether the Reserve account is surplus and therefore capital pursuant to KRS 136.070 and *Kroger.*" This appeal by Revenue followed.

Our standard of review is established by statute. KRS 13B.150(2) directs that

[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the agency;

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

If the question to be answered on appeal concerns the construction and application of statutes, and therefore concerns a matter of law, our review is conducted de novo. *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488, 490–91 (Ky.1998).

Revenue has argued that in its protest letters and in its filings to the KBTA, B & W never challenged the determination that the Reserve Account is capital, but merely insisted that the Insurance Recovery Account should also be included in the calculation of capital, in the form of an offset. In other words, while B & W repeatedly asserted that the Insurance Recovery Account should be included in the calculation of capital, it never stated that the Reserve Account should be excluded from the calculation of capital. Revenue has strenuously argued the preservation issue, presumably because if we start with the premise that the entire Reserve Account is capital, an offset would constitute an exemption that is neither expressly permitted by statute nor addressed by our case law. This was the position taken by the KBTA.

Revenue has relied on *Stoner Creek Stud v. Revenue Cabinet,* 746 S.W.2d 73, 75 (Ky.App.1987), wherein this court affirmed a decision of the KBTA refusing to

review issues that had not been raised in the appellant's petition or preconference memorandum.

■ Although our review of B & W's protest letters to Revenue and its filings to the KBTA indicates that the company initially argued only that the Reserve Account should be offset by the Insurance Recovery Account, we agree with the circuit court that this did not equate to a concession that the entire Reserve Account is capital.

In this case, the issues were so closely related and the phrasing sufficiently inclusive that, in our view, the circuit court correctly ruled that B & W preserved for review the question of whether that portion of the Reserve Account corresponding to the Insurance Recovery Account should be included in capital for purposes of the corporation license tax. Furthermore, although the KBTA found that the issue had not been preserved, it based its entire ruling on the determination that the Reserve Account was a liability account that should be included in capital as surplus.

■ Revenue has argued that the KBTA correctly held that the entire Reserve Account is a contingent liability that is capital under the *Kroger* definition, and that no portion of it may be exempted from taxation. B & W maintains that only that portion of the Reserve Account which exceeds the assets in the Insurance Recovery Account constitutes "unencumbered money" or "capital employed in the business" and is therefore subject to the corporation license tax. The circuit court held that additional findings of fact were necessary in order to determine the nature of the Reserve Account; however, Revenue and B & W agree that such additional findings of fact are not necessary to determine the nature of the Reserve Account.

Revenue has relied on cases from Michigan and Tennessee, in which accounts containing reserves for future debt were found to be surplus and therefore capital subject to state franchise taxes. In *E.L. Bruce Co. v. Evans*, 190 Tenn. 176, 228 S.W.2d 105 (1950) the Tennessee Supreme Court held that an account containing reserves for future bad debt could not be excluded from surplus until the debt had actually become bad and uncollectible.

> No reason is given, and we can think of none, whereby the taxpayer should be accorded the privilege of determining the amount of his tax by setting aside 'reserves' which do not represent their actual accrued liability. If reserves are set aside for contingencies which may never arise, or for obligations which are admittedly of a doubtful character, the whole purpose and intent of the law is thereby completely nullified.

*Bruce,* 228 S.W.2d at 106.

Similarly, the Michigan Supreme Court found that a reserve for deferred federal income taxes should be included in capital for state franchise tax purposes because

> [f]uture federal income taxes are not an outstanding indebtedness—they are a mere contingency. The fact that a tax is certain to accrue in years to come does not make it a present debt. If it did, a corporation could remove from surplus any amount of its assets by the simple expedient of setting up reserves for the payment of property taxes or for meeting other eventualities certain to occur in future years in connection with its corporate existence.

*National–Standard Company v. Department of Treasury,* 384 Mich. 184, 180 N.W.2d 764, 774 (1970).

While the reasoning in these cases is persuasive, in neither of them was the court also confronted with a corresponding

**156**

contra account containing non-current assets.

█ The determination of "net assets" is critical to arriving at the amount of surplus for purposes of the corporation tax statute. "[W]ith reference to corporations, the common and approved meaning of the word 'surplus' is the excess of the net assets of a corporation over the par or stated value of its corporate stock." *The Kroger Co. v. Department of Revenue,* 614 S.W.2d 705, 708 (Ky.App.1981) disc. rev. denied 1981.

Revenue has argued that B & W incorrectly defined "net assets" as all assets minus all liabilities, contingent, fixed or otherwise. Revenue maintains that the proper definition of "net assets" is all assets minus total debt, fixed, unconditional and legally enforceable. This definition appears in Revenue's own regulations; 103 KAR 20:020 defines "net assets" as "the amount by which total assets of a corporation exceed the total debt of the corporation."

█ Surely, however, when there is an account that represents a non-current asset, as there is in this case with the Insurance Recovery Account, it should properly be offset against the non-current liability. Clearly, the Reserve Account is "contingent" only to the extent that it is not offset by the Insurance Recovery Account. It is the remaining portion of the Reserve Account that constitutes a contingent liability that is surplus subject to taxation. As B & W has pointed out, without such an offset, there would be a sudden increase in B & W's taxable capital between 1994 and 1995 of approximately $750,000,000, even though there was no infusion of new capital into the company at that time.

It is familiar law that it is the duty of courts to look to the substance rather than to the form of a transaction, and the rule applies with equal force to matters of taxation.

*Collins v. Kentucky Tax Commission,* 261 S.W.2d 303, 306 (Ky.1953) (citations omitted).

For the foregoing reasons, the opinion and order of the Franklin Circuit Court is affirmed insofar as it held that B & W preserved the issue of whether the Reserve Account is capital, provided that the account is offset by the Insurance Recovery Account. The opinion and order is reversed as to the issue of additional findings, which are unnecessary in light of our holding. The matter is remanded to the circuit court for further proceedings consistent with the views stated therein.

ALL CONCUR.